584 A.2d 376

**Lawrence M. LIGON, Appellant,**

**v.**

**The MIDDLETOWN AREA SCHOOL DISTRICT and Reynolds Aluminum Building Products Company, Appellees.**

**Lawrence M. LIGON**

**v.**

**The MIDDLETOWN AREA SCHOOL DISTRICT and Reynolds Aluminum Building Products Company.**

**Appeal of REYNOLDS ALUMINUM BUILDING PRODUCTS COMPANY, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1990.
Decided Dec. 11, 1990.

568

Neil J. Rovner, Angino & Rovner, P.C., Harrisburg, for appellant, Lawrence M. Ligon.

Charles W. Rubendall II, Keefer, Wood, Allen & Rahal, Harrisburg, for appellee and cross-appellant, Reynolds Aluminum Building Products Co.

James Thomas II, Thomas & Thomas, Harrisburg, for appellee, Middletown Area School Dist.

Before CRAIG, President Judge, SMITH, J., and SILVESTRI, Senior Judge.

SMITH, Judge.

This case involves consolidated cross-appeals from a judgment entered by the Court of Common Pleas of Dauphin County in favor of Lawrence W. Ligon (Ligon) and against the Middletown Area School District (School District) and Reynolds Aluminum Building Products Company (RABPCO). Ligon argues in No. 1055 C.D.1990 that the

trial court erred in refusing to amend the verdict to relieve the School District of all liability, so as to place full liability for the verdict on RABPCO. RABPCO argues in No. 1056 C.D.1990 that the trial court erred by not granting RABPCO a judgment n.o.v. or a new trial, contending that the trial court committed numerous errors during the course of the trial. The judgment of the trial court is affirmed.

Ligon was a fire safety inspector for American Fire and Safety Company (AFSC). On August 22, 1986, the School District requested AFSC to complete the yearly inspection of fire extinguishers at the Feaser School in Middletown, Pennsylvania. The School District was a regular account of AFSC; and Ligon, as an employee of AFSC, had inspected the fire extinguishers at the Feaser School for several years. On August 25, 1986, Ligon drove to the school for the inspection, complying with the School District's request for expedient service.

At that time, RABPCO was performing renovations at the school, including the installation of an elevator where the school's incinerator was once located. When Ligon arrived at the school, he proceeded to the school's incinerator room where he knew a fire extinguisher was kept or stored. Ligon opened the doors to this room and saw a second solid metal door which had not been present before. Although the interior of this room was dark, Ligon used the light from the outside hallway to transverse the approximately five feet to the second door. The outside door closed as Ligon opened the second door and reached in to find the light switch he believed was within. Ligon then fell fifteen feet down an empty elevator shaft which had been installed by RABPCO, sustaining serious injuries to his back. There were no warning signs in the area posted by either RABPCO or the School District; the doors to the elevator shaft were not locked, despite the fact that they were usually locked when not in use for construction purposes; and the work light in the elevator shaft area, though

normally turned on, was for some reason out the morning of the accident.

Ligon brought suit against the School District and RABPCO. The matter was tried before a jury; and before Ligon rested his case, he entered into a joint tortfeasor's settlement with the School District. The issue of the School District's liability nevertheless went to the jury, which returned a verdict in favor of Ligon for $175,000, assigning 32.5% liability to the School District and 67.5% liability to RABPCO.

## I. Ligon's Appeal

Discovering that the jury's award against the School District exceeded the settlement amount with the School District, Ligon filed post-trial motions to have the School District relieved of liability on the grounds of local governmental immunity so that RABPCO would remain as the sole defendant responsible for the jury's award. Ligon's motions were denied, and Ligon asserts in this appeal that the trial court erred in denying the motions because evidence was presented at trial showing that the area of the school in question was under the complete control of RABPCO and therefore not in the "possession" of the School District, a necessary element of the real property exception to local governmental immunity under 42 Pa.C.S. § 8542(b)(3).[1] Ligon also argues that because a third person, RABPCO, contributed to the injuries, the School District cannot fall under any of the exceptions to local governmental immunity.

The trial court found that the record contained sufficient evidence for the jury to conclude that the School District possessed and controlled the area where Ligon sustained his injuries. It also described Ligon's reversal of positions regarding the liability of the School District in the following manner:

1. Section 8542(b)(3) provides in relevant part that a local governmental unit will not be immune from acts arising from that unit's "care, custody or control of real property in [its] possession."

> Not since Joan dePlucelle in Shakespeare's Henry VI, Part I, attempted to defend herself from a capital charge by proclaiming herself a virgin and then, seeing that that particular defense was unlikely to prevail, informed the judge that she was with child, has anyone argued a judicial point with a more breathtaking lack of concern for consistency.

Trial Court Opinion, pp. 4–5. Although other litigants certainly have spun to the depths of Shakespeare's sad example, Ligon's reversal of positions on the School District's liability does indeed raise substantial questions about its propriety.

 Pursuant to the doctrine of judicial estoppel, a party to an action is estopped from advocating a position inconsistent with his or her position in a previous action if the prior position was successfully maintained. *Associated Hospital Service v. Pustilnik,* 497 Pa. 221, 439 A.2d 1149 (1981). Certainly, this doctrine would apply with equal if not greater force when a party switches positions within the same action. *See Selected Risks Insurance Co. v. Kobelinski,* 421 F.Supp. 431 (E.D.Pa.1976) (judicial estoppel is the well established principle that a party may not assert contrary positions in the same or related proceedings). Federal courts have long applied this principle of estoppel where litigants "play fast and loose" with the courts by switching legal positions to suit their own ends. *Scarano v. Central R. Co. of New Jersey,* 203 F.2d 510 (3d Cir.1953); *Wade v. Woodings–Verona Tool Works, Inc.,* 469 F.Supp. 465 (W.D. Pa.1979); *Selected Risks.*

 Judicial estoppel has been applied to prevent a party from changing his or her position regarding jurisdiction because it suited that party's interests. *Buehler v. Philadelphia & Reading Ry. Co.,* 280 Pa. 92, 124 A. 325 (1924); *Selected Risks.* That is analogously the situation in this case. Ligon brought an action against the School District, prosecuted that action, and allowed the issue of the School District's liability to go to the jury without objection, all without any concern that the School District may have been

immune from suit. Once Ligon prevailed when the jury returned a verdict against the School District, Ligon reversed himself and argued that the School District was immune from suit, in essence that the trial court lacked the power to enter a judgment against the School District. Further, Ligon raises a defense on behalf of the School District that the School District itself never raised. Consequently, Ligon's assertion of the School District's immunity, now that the School District has settled with Ligon, appears specious and, moreover, an attempt to impose responsibility against RABPCO for payment of the entire jury award, thereby recovering the $175,000 jury award while retaining proceeds of the School District settlement. In consideration of all of these factors, it is apparent to this Court that Ligon is estopped from arguing a contrary position concerning the trial court's power to enter a verdict against the School District that Ligon had taken throughout trial to a successful conclusion. *See Iselin v. La Coste,* 147 F.2d 791 (5th Cir.1945), holding that a party that admits the existence of subject matter jurisdiction in a first litigation cannot contend in a subsequent collateral litigation between the same parties that jurisdiction had been lacking. Accordingly, because Ligon's appeal is unquestionably devoid of merit, the trial court's refusal to amend the verdict to relieve the School District of liability will be upheld.

## II. RABPCO's Appeal

RABPCO raises seven issues regarding alleged errors made by the trial court. This Court shall address them in the order they are raised.

### 1. *The Faust deposition.*

First, RABPCO argues that the trial court erred or abused its discretion by sustaining an objection to a question posed by RABPCO's counsel in the deposition of Donald L. Faust, which was offered at trial in lieu of live testimony. Mr. Faust is the business manager of the School District. The question asked was, "Did Mr. Sides

[the Feaser School building grounds supervisor] ever tell you that he might have to escort that person [referring to Ligon] around because there were so many changes made?" N.T., Faust deposition, February 24, 1989, p. 25. The trial court sustained Ligon's objection because the response called for hearsay not qualifying under the admission exception. The response to RABPCO's question, held inadmissible by the trial court, was as follows:

THE WITNESS: All right. Yes, I had asked him before if he had to show the man around for some of these [fire extinguishers] because they were in different areas now.

Q: And what was his response?

MR. ROVNER: Same objection.

THE WITNESS: He thought he might have to. He had seen him in the buildings in the other part of the school district, and had talked to him beforehand that he might have to show him around because they were in different areas.

*Id.*, pp. 25–26. RABPCO contends that this response falls under the admission exception to the hearsay rule.

 It is well settled in this Commonwealth that an agent's statements are admissible as admissions of the agent's principal only if the agent had the authority to make the statements. *Catagnus v. County of Montgomery*, 113 Pa.Commonwealth Ct. 129, 536 A.2d 505 (1988). The record contains no evidence that Mr. Sidds (erroneously referred to in the Faust deposition as "Sides"), was authorized to make statements on behalf of the School District. Pennsylvania continues to adhere to the traditional view with respect to the admissions exception to the hearsay rule and does not recognize as admissions those statements made by an agent within the scope of his or her agency or employment unless authorized by the principal. *Id.; DeFrancesco v. Western Pennsylvania Water Co.*, 329 Pa.Superior Ct. 508, 478 A.2d 1295 (1984). Therefore, Mr. Sidds' statements fail to qualify under this exception. Also, Mr. Sidds later testified at trial, providing RABPCO an opportunity to elicit testimony concerning any of the points struck

from the Faust deposition which RABPCO considered relevant.

## 2. *The photograph of the accident.*

RABPCO next argues that the trial court erred by admitting, over RABPCO's objection, a photograph depicting Ligon lying at the bottom of the elevator shaft being attended to by medical personnel. RABPCO contends that the evidentiary value of the photograph is outweighed by the likelihood that it would inflame the minds and passions of the jurors, particularly where there is no dispute that the accident occurred.

As a general rule, the admission of photographs into evidence rests within the sound discretion of the trial court. *DiBuono v. A. Barletta & Sons, Inc.,* 127 Pa.Commonwealth Ct. 1, 560 A.2d 893, *appeal denied,* 524 Pa. 632, 574 A.2d 73 (1989). This Court may not reverse a determination made in the trial court's discretion unless the record discloses that the trial court's determination was manifestly unreasonable or the result of partiality, prejudice, bias, or ill-will. *Commonwealth v. Lane,* 492 Pa. 544, 424 A.2d 1325 (1981). Moreover, this Court recognizes the view that

> [m]erely because a photograph is gruesome is not a reason to exclude it. The court must consider whether the evidentiary value of the photograph outweighs the danger that it will upset the jury. Even when a witness has described an injury, a photograph may still have an evidentiary value in that it may make the description more intelligible. (Citations omitted.)

*Cervone v. Reading,* 371 Pa.Superior Ct. 279, 281, 538 A.2d 16, 20, *appeal denied,* 520 Pa. 586, 551 A.2d 213 (1988). Accordingly, the trial judge in the case *sub judice* did not abuse his discretion in admitting the photograph because it depicted the scene of the accident and was thus quite relevant to the issues at hand.

### 3. *Ligon's contributory negligence and RABPCO's lack of negligence.*

RABPCO argues that the trial court erred by refusing to grant RABPCO's motions for compulsory nonsuit, directed verdict, and judgment n.o.v. on the grounds that Ligon was at least 51% negligent as a matter of law and because Ligon failed to prove that RABPCO was negligent.

RABPCO bases its argument that Ligon was at least 51% negligent as a matter of law upon the following doctrine:

> [I]t is generally held, in the absence of evidence of a compelling necessity, that one who follows an unfamiliar course in the dark or steps into darkened and unfamiliar space, relying upon his sense of touch instead of obtaining and using adequate lighting facilities, and sustaining personal injuries, is guilty of contributory negligence as a matter of law.

*Barth v. Klinck,* 360 Pa. 616, 618, 62 A.2d 841, 842 (1949). *Accord Just v. Sons of Italy Hall,* 240 Pa.Superior Ct. 416, 368 A.2d 308 (1976) (plurality). These cases, however, were decided at a time when any contributory negligence was fatal to a plaintiff's cause of action.[2] Further, the particular facts of the case *sub judice* negate an application of this doctrine. As the trial court aptly stated:

> Remembering that we must take the evidence factually and inferentially from the plaintiff's viewpoint [as the verdict winner], there is testimony that Mr. Ligon was familiar with the fact that the area had housed an incinerator and had reason to expect the continued existence of a floor. Nor did he simply open the door and step in. He testified that he felt inside the door for a light switch which he believed was there from former experience, and in so doing fell into the pit.

Trial Court Opinion, pp. 7–8. The jury found that Ligon's own negligence, which the jury quantified at five percent,

---

**2.** Pennsylvania's comparative negligence statute, 42 Pa.C.S. § 7102, became effective June 27, 1978.

was not a causal factor of his injury. In light of the testimony presented at trial, there is no basis to disturb the jury's verdict.

■ RABPCO further contends that Ligon failed to prove RABPCO's negligence at trial on the basis that the evidence showed that RABPCO had kept the doors to the elevator shaft locked and had maintained a light in the shaft at all times except at the time of Ligon's accident. The trial record is replete, however, with evidence that the area in question was under the control or partial control of RABPCO; that the doors were unlocked on the morning of the accident; that the light which was maintained by RABPCO was not lit that morning; and that RABPCO failed to place warning signs in the area even though it was RABPCO's responsibility to do so.

### 4. *The testimony of Ligon's employer.*

RABPCO next argues that the trial court erred by overruling RABPCO's objections to testimony by Ligon's employer concerning (1) what he told his employees about bonus payments for acquiring new accounts and (2) what he told individuals at the Feaser School following the accident. RABPCO contends that these statements constitute inadmissible hearsay warranting a new trial.

■ Regarding the employer's statements concerning what he had told his employees about bonuses, the employer was merely repeating in different form what he had testified to previously without objection, that in fact the employer offered his employees a bonus plan for new accounts. Trial, N.T., p. 309. To constitute reversible error, a ruling on evidence or an instruction to a jury must be shown not only to have been erroneous, but harmful to the complaining party. *Anderson v. Hughes*, 417 Pa. 87, 208 A.2d 789 (1965); *R.P. Clarke Personnel, Inc. v. Commonwealth National Bank*, 384 Pa.Superior Ct. 524, 559 A.2d 560 (1989). This was not shown here.

■ Regarding the employer's second statement concerning what the employer told individuals at the school, the trial record demonstrates that the employer was merely recounting what he observed at the school, that there were no warning signs in the area and that the doors to the elevator site were unlocked. This is, of course, repetitive testimony to facts already in evidence; and RABPCO has similarly failed to demonstrate how it was harmed by its admission. *See Anderson; R.P. Clarke.*

5. *The exclusion of the testimony of Mr. Lehman.*

■ RABPCO contends that the trial judge erred by excluding the testimony of David S. Lehman, a fact witness for RABPCO. Mr. Lehman, an inspector for the Pennsylvania Department of Labor and Industry, visited the Feaser School during its renovations, and as part of his job, makes safety recommendations. RABPCO offered Mr. Lehman's testimony to prove essentially the following: that RABPCO had taken safety precautions about the elevator shaft, including locking of the outer doors; that he had always found the doors to be locked; that these safety precautions seemed fine to him; and that he, as a rule, would check with a responsible party at a construction site before tending to his duties and would use a flashlight in darkened construction areas. The trial judge did not abuse his discretion in excluding this proffered testimony.

First, a trial judge is within his or her discretion in rejecting evidence which is merely duplicative. *Smith v. Commonwealth*, 80 Pa.Commonwealth Ct. 117, 470 A.2d 1125 (1984). Second, as the trial court correctly observed, the accident "according to the plaintiff was caused in large part by the failure of the door to remain locked. One cannot ask a witness about his opinion of the safety of a precaution which was not taken. The safety of an intended procedure is irrelevant when it is contended that the procedure was not followed at the time of the accident." Trial Court Opinion, p. 9. Third, RABPCO fails to support with argument or case law the relevancy or necessity for Mr.

Lehman's testimony concerning his particular practices at construction sites, and this Court finds none.

Also, the case law RABPCO cites in support of its argument is inapposite. In *Orlando v. Herco, Inc.*, 351 Pa.Superior Ct. 144, 505 A.2d 308 (1986), the defendant was permitted to introduce evidence concerning its customary method of food preparation and the fact that other diners did not report illness on the relevant day to counter plaintiff's argument that his injuries were caused by spoiled food eaten at the restaurant. In the case *sub judice*, there is no question that the customary safety procedures employed by RABPCO were not in place at the time of the accident; therefore, additional testimony concerning these safety procedures is, as the trial court determined, irrelevant. Further, in *Kubit v. Russ*, 287 Pa.Superior Ct. 28, 429 A.2d 703 (1981), the plaintiff was permitted to introduce expert testimony concerning the standard procedure police officers followed in handling and extinguishing road flares to prove that the defendant police failed to adhere to it. That is exactly the opposite of the present case. Accordingly, the trial court did not abuse its discretion by refusing to admit the testimony of Mr. Lehman.

6. *The exclusion of a videotape re-enactment.*

RABPCO argues that the trial court erred by refusing to allow RABPCO to show a videotaped re-enactment of the accident to the jury, featuring an actor representing Ligon who approaches the locked doors, opens them with a key, and proceeds toward what is obviously an elevator door complete with buttons. Again, the admission of demonstrative evidence is in the sound discretion of the trial judge. *DiBuono.* The trial record contains extensive testimony from Ligon concerning how the accident occurred, and RABPCO utilized a chart at trial to aid the jury in understanding the scene. Thus, there is absolutely no basis to conclude that the trial court abused its discretion in excluding this evidence, which the trial judge determined to be potentially confusing and misleading.

### 7. *The trial court's charge to the jury.*

 Finally, RABPCO argues that the trial court erred during the course of its charge to the jury by remarking that while there are two defendants, the emphasis seemed to have shifted to RABPCO (because the School District had left the case after settling with Ligon), and by refusing to include certain proposed jury instructions requested by RABPCO. Regarding the remark made by the trial judge that the emphasis seemed to have shifted to RABPCO, no objection was made by RABPCO when the remark was uttered; therefore, RABPCO's objection is waived. *See Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).

 Regarding the proposed jury instructions, this Court's review of the trial court's jury charge leads to the conclusion, also reached by the trial court, that the requested points for charge, though not given in the exact language requested by RABPCO, were all adequately covered in the trial court's general charge.[3] The refusal to give a proper instruction requested by a party is grounds for a

3. RABPCO's requested points for charge are as follows:
 1. The mere happening of an event, unfortunate as it may be, does not serve as the basis for liability.
 2. Negligence is never presumed and the mere happening of an accident is not evidence of negligence.
 3. If you find that Mr. Ligon's negligence in not observing where he was walking or failing to use his flashlight was greater than fifty percent of the cause in fact of this accident, then you must find in favor of the Defendants.
 5. Defendants claim that Mr. Ligon was negligent in choosing to enter an area and a route that was totally dark, when he had a choice of using his flashlight or propping open the door to give him a lighted route. If Mr. Ligon, having a choice of two courses of actions and routes, one which was safe and the other of which is subject to risks and danger, voluntarily chooses the dangerous course of action and route and is injured, he is contributorily negligent.
The record clearly demonstrates that the trial judge thoroughly instructed the jury that liability would be based only upon negligence and that Ligon's own acts could be taken into account to determine if they were a substantial factor in bringing about the injuries. The jury found all parties negligent but that Ligon's negligence was not a substantial factor in causing his injuries.

new trial only if the substance of that instruction has not otherwise been covered by the trial court's general charge. *Commonwealth v. LaMassa*, 367 Pa.Superior Ct. 54, 532 A.2d 450 (1987).

## ORDER

AND NOW, this 11th day of December, 1990, the judgment entered by the Court of Common Pleas of Dauphin County is hereby affirmed.