**Dr. Abdul Aziz SALAMEH, Appellant,**

v.

**L. Anthony SPOSSEY, Suzanne Gomez and Paul Manning.**

**Dr. Abdul Aziz Salameh, Appellant,**

v.

**City of Washington, a Third Class City and/or a Municipal Corporation within the Commonwealth of Pennsylvania; and Robert Sabot, Individually and in his capacity of City Councilman.**

Commonwealth Court of Pennsylvania.

Argued Feb. 8, 1999.

Decided May 7, 1999.

Opinion Amended on Reconsideration July 1, 1999.

**15.** Based on our disposition of this issue, we will not address the other claims raised in this appeal.

Peter M. Suwak, Washington, for appellant.

Christine Seymour, Pittsburgh, for appellee.

Before PELLEGRINI, J., KELLEY, J., and JIULIANTE, Senior Judge.

KELLEY, Judge.

In these consolidated appeals, Dr. Abdul Aziz Salameh (Salameh) appeals from an order of the Court of Common Pleas of Washington County (trial court) denying Salameh's post-trial motions and declining to grant a new trial. We affirm.

## I. FACTS

Salameh is a medical doctor of Palestinian/Jordanian ancestry who is now an American citizen practicing medicine in Washington County, Pennsylvania. Salameh owned the Duane Hotel on South Main Street located in the downtown area of the City of Washington (City). The trial court charitably described the hotel as an antiquated, ill-kept building. The City cited the hotel on prior occasions for various ordinance and code violations due to its deteriorated condition. In an attempt to improve the structure, Salameh applied for federal and state rehabilitative funds.

In accordance with the regulations governing the receipt of the governmental rehabilitative funds, Salameh applied for a building permit. The City's planning commission approved the application, but expressed concern about the availability of off-street parking as required by City ordinance. The plans were submitted to city council for review. Due to previous problems with the building, the mayor and city council proceeded carefully in its consideration of the permit for reconstruction.

Delays occurred in the issuance of the building permit due to disputes over the available number of parking spaces and whether the parking spaces were in accordance with the zoning ordinance. The trial court ultimately settled the zoning ordinance issue directing the City to issue the building permit.

Salameh then filed a complaint against the City and Robert Sabot (Sabot), a city council member, alleging various civil rights and state tort violations arising out of Salameh's application for the building permit. The City and Sabot filed preliminary objections seeking a more specific pleading which the trial court granted. Salameh's amended complaint included a cause of action for civil rights violations pursuant to 42 U.S.C. § 1983,[1] a claim for discrimination/denial of equal protection also under 42 U.S.C. § 1983, and state tort claims for defamation, commercial disparagement, invasion of privacy, intentional

---

**1.** Section 1983 creates a remedy for violations of federal rights committed by persons acting under color of state law and provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

interference with contractual opportunity and intentional infliction of emotional distress.

Salameh also filed an action against L. Anthony Spossey (Spossey), Suzanne Gomez (Gomez) and Paul Manning (Manning)[2] which, in addition to the same claims brought against the City and Sabot, alleged malicious prosecution and wrongful use of civil proceedings. The trial court consolidated the cases upon motion filed by Salameh. Prior to trial, Salameh filed a motion to challenge the jury array, which the trial court denied. The action finally came up for trial in March 1993.

At the conclusion of Salameh's case, the City, Sabot, Spossey, Gomez, and Manning (hereinafter collectively referred to as "defendants") moved for, and the trial court granted, a directed verdict on Salameh's claims for intentional infliction of emotional distress, commercial disparagement, invasion of privacy and defamation. The trial court sent the claims of civil rights violations, discrimination, intentional interference with contractual opportunity, wrongful use of civil proceedings and malicious prosecution to the jury. The jury returned a verdict on all claims in favor of defendants.

Salameh timely filed a motion for post-trial relief. After several years of delay due to Salameh's inability to secure the record, the trial court held oral argument on the motion. By order dated March 10, 1997, the trial court denied the post-trial

2. Spossey is Mayor of the City of Washington, while Gomez and Manning are members of City Council.

3. We note that the brief submitted by Salameh's counsel to this court on appeal violates Chapter 21 of the Pennsylvania Rules of Appellate Procedure. Specifically, counsel failed to comply with Pa. R.A.P. 2117 governing the statement of the case. Rule 2117 requires that an appellant set forth a concise and balanced presentation of the factual and procedural events giving rise to the order appealed and expressly prohibits argument in the statement of the case. Here, Salameh's statement of the case contains a substantial

motions and declined to grant a new trial. This appeal followed.[3]

## II. ISSUES

Salameh presents the following issues for our review:

(1) whether legal errors resulted in the impanelment of a jury not free from the appearance or reality of bias;

(2) whether the trial court erred as a matter of law when it granted defendant's motion for a directed verdict/nonsuit on the claims of defamation, invasion of privacy and commercial disparagement;

(3) whether the trial court erred as a matter of law when it excluded Salameh's proffered evidence related to prejudice against him;

(4) whether Salameh is entitled to judgment notwithstanding the verdict regarding the claim of the violation of procedural due process rights; and

(5) whether the trial court erred as a matter of law when it refused to issue jury instructions as requested and by otherwise issuing erroneous instructions.

## III. DISCUSSION

### A. Issue 1 – Legal errors with respect to impanelment of the jury

Salameh argues that the trial court committed several legal errors resulting in the impanelment of a jury not free from the appearance or reality of bias.[4] We will discuss each alleged error separately.

amount of argument and speculation. We remind counsel that when the defects in a brief are deemed substantial, the appeal may be quashed or dismissed, Pa. R.A.P. 2101, and that this court's tolerance of violations of the rules is not unlimited. In this case, we strongly disapprove of counsel's blatant disregard for the appellate rules; however, in the interest of judicial economy, we will consider Salameh's appeal.

4. We refer Salameh and his counsel to the insights of the Honorable Ruggero J. Aldisert of the United States Court of Appeals for the Third Circuit:

### 1. Impanelment of the jury

First, Salameh contends that the trial court erred by denying his petition to challenge the jury array.[5] Salameh argues that the trial court failed to prevent the jury selection process from being contaminated due to the direct and unauthorized interference by employees of the Washington County Commissioners who generated the computer list of jurors to be specially seated for this trial. This alleged contamination, Salameh contends, resulted from the jury commissioners' failure to follow the mandatory statutory provisions contained in Chapter 45 of the Judicial Code which govern the jury commissioners duties with respect to the selection and custody of jurors. Salameh contends that the jury commissioners have unlawfully delegated their statutory responsibilities to the employees of the Washington County Commissioners. Salameh argues that because these duties have been delegated to employees of overtly partisan political officials where a single party dominates the machinery of government, the jury pools are non-representative and partisan. Further, Salameh argues that the jury lists were not drawn from a cross-section of the community. Salameh contends that the lists were not supplemented by other available records resulting in the complete absence of the presence of members of the non-white race and/or ethnic groups, despite their presence in the general population of Washington County.[6]

Pursuant to section 2122 of the Judicial Code, the composition of the jury selection commission in Washington County consists of two elected jury commissioners and the President Judge of the Court of Common Pleas of Washington County. 42 Pa.C.S. § 2122. "Each jury selection commission shall exercise the powers and perform the duties vested in and imposed upon such commissions by Subchapter B of Chapter 45 (relating to selection and custody of jurors) and any other powers and duties vested in and imposed upon such commissions by law." Section 2124 of the Judicial Code, 42 Pa.C.S. § 2124.

Section 4521 of the Judicial Code governs the selection of prospective jurors and provides in pertinent part:

(a) **Preparation of master list of prospective jurors.**—At least annually the jury selection commission shall prepare a master list of prospective jurors. The list shall contain all voter registration lists for the county, which lists may be incorporated by reference, or names from such other lists which in the opinion of the commission will provide a number of names of prospective jurors which is equal to or greater than the number of names contained in the voter registration list.....

. . . .

With a decade and a half of federal appellate court experience behind me, I can say that even when we reverse a trial court it is rare that a brief successfully demonstrates that the trial court committed more than one or two reversible errors. I have said in open court that when I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to any of them. I do not say that it is an irrebuttable presumption, but it is a presumption nevertheless that reduces the effectiveness of appellate advocacy. Appellate advocacy is measured by effectiveness, not locquaciousness.

*United States v. Hart*, 693 F.2d 286, 287 n. 1 (3d Cir.1982), *quoting* Aldisert, "The Appellate Bar: Professional Competence and Professional Responsibility – A View From the Jaundiced Eye of One Appellate Judge", 11 Cap.U.L.Rev. 445, 458 (1982).

5. Section 4526 of the Judicial Code provides that a party may challenge the compliance with the jury selection procedures by petitioning the court to stay the proceedings in the case where he or she is a party and to select a new jury array. 42 Pa.C.S. § 4526. In this case, Salameh timely filed a petition to challenge the jury array which was denied by the trial court after a hearing on the petition.

6. The record indicates that 96% of Washington County's population is white, while the remaining 4% is made up of various minority groups.

(c) **Selection of names for jury service.**—At least once each year the commission shall select at random from the master list of prospective jurors the number of names designated by the president judge pursuant to court orders issued under section 4531 (relating to issuance of court orders for jurors).

42 Pa.C.S. § 4521. Pursuant to section 4525 of the Judicial Code, the jury selection commission is authorized to use mechanical devices, such as computers, in the random selection, drawing, investigating, summoning and listing of jurors. 42 Pa.C.S. § 4525.

Herein, the record reveals that the jury selection commission has elected to utilize the computer department for Washington County (computer department) to mechanically generate the master list of prospective jurors as required by section 4521(a) and the court ordered number of names of prospective jurors as required by section 4521(c). *See* Reproduced Record (R.R.) at 307a—394a. At the suggestion of the court administrator, the president judge and the then elected jury commissioners, the computer department installed a software program on its computer in the 1980s to randomly select prospective jurors based on a computerized formula. R.R. at 338a. The procedure calls for the president judge or the elected jury commissioners to send a formal request to generate a list containing a specified number of prospective jurors to the operations manager for the computer department. *Id.* In response to the formal request, the computer department mechanically generates the requested juror list and forwards the same to the jury selection commission. *Id.*

■ Thus, the mechanical generation of the lists of prospective jurors is the only function that the employees of the computer department of Washington County perform with respect to the selection of prospective jurors in Washington County. Contrary to Salameh's contentions, we believe that this procedure does not violate Chapter 45 of the Judicial Code. The Judi-cial Code expressly permits the jury selection commission to utilize mechanical means, such as computers, in the random selection of prospective jurors. Section 4525 of the Judicial Code, 42 Pa.C.S. § 4525. The fact that the jury selection commission has chosen to utilize another county department's computer facilities and resources clearly does not contravene the intent of any of the statutory provisions governing the selection of prospective jurors. The jury selection commission's utilization of the county's computer department does not prescribe or bear upon the substance of the jury selection commission's duty to prepare a master list of prospective jurors but merely upon the manner of the performance of that duty. The record shows that the jury selection commission is still responsible for and performs all of the statutorily mandated provisions governing the selection and custody of jurors. Clearly, there is nothing in Chapter 45 of the Judicial Code, which prohibits the manner in which the jury selection commission has chosen to perform the duty of preparing jury lists.

■ Furthermore, based on the record in this case, Salameh has failed to convince this Court that the jury selection commission's chosen manner of performing the mechanical aspects of that duty contaminated the jury selected for his trial. Therefore, there is no need for the jury selection commission to purchase and maintain its own separate computer system to insulate them from any outside influence as suggested by Salameh. To do so would clearly be a waste of precious resources.

■ Moreover, Salameh has failed to prove that the manner in which the jury selection commission selected prospective jurors failed to include a cross-section of the community. In generating a master list of prospective jurors, section 4521 directs that the list shall contain all voter registration lists for the county and that the jury selection commission may incorpo-

rate names from other lists. Therefore, the utilization of lists besides the mandated voter registration list is discretionary.

▇ Herein, the jury selection commission, in addition to utilizing voter registration lists, utilized lists of licensed drivers to expand the pool in preparing a list of prospective jurors. This was clearly permissible and in accordance with the statute. *See* Section 4521 of the Judicial Code, 42 Pa.C.S. § 4521; *Commonwealth v. Cameron,* 445 Pa.Super. 165, 664 A.2d 1364, 1370 (1995), *appeal denied,* 544 Pa. 622, 675 A.2d 1242 (1996) (County's plan for random selection of jurors through the use of Department of Transportation's list of licensed drivers over the age of 18 was constitutional; the method actually expanded the number of names in the available pool from prior practice of selecting jurors from voter registration lists and was likely to have increased the number of minorities and social and physically disadvantaged individuals available for selection. It is recognized that possession of a driver's license is so desirable and widespread that it has become the linchpin for *expanding* voter registration).

Accordingly, we reject Salameh's argument that the trial court committed legal error by denying his petition to challenge the jury array.

### 2. Informal Excusal of Jurors

Next, Salameh argues that his rights were violated because jurors were excused informally without review of adequate excuse by the court of common pleas, which is contrary to the statute. This informal process, Salameh contends, contributes to the skewing of the jury pool.

Section 4503 of the Judicial Code provides that a juror may be excused from jury duty if (1) the person is serving on active duty in the armed forces (2) the person has served on jury duty within the last three years or if the person served for less than three days, he or she has served on jury duty within the last year and (3) the person demonstrates to the court un-

due hardship or extreme inconvenience. 42 Pa.C.S. § 4503. If a person demonstrates undue hardship or extreme inconvenience, the court may excuse that person permanently or for such period as the court determines is necessary. *Id.*

▇ While Salameh is correct that a person who asserts that service on a jury will cause him or her undue hardship or extreme inconvenience must be excused by the court, Salameh fails to state or offer any evidence as to how the jury for his trial was skewed by the jury commissioners informally excusing jurors. Moreover, Salameh fails to set forth how this conduct harmed his right to a fair trial. Accordingly, we reject Salameh's argument that he is entitled to a new trial because the jury was somehow skewed by the informal excusal of jurors.

### 3. Denial of Motion for Change of Venue

Salameh contends that the trial court erred in refusing to grant his motion for change of venue which was premised upon extensive pre-trial publicity regarding his felony convictions for drug over-prescription and unauthorized lab payments. Salameh states that six of the forty-four panel members were aware of his convictions and that the trial court erred by refusing to disqualify these jurors for cause. We disagree.

▇ A request for change of venue is addressed to the sound discretion of the trial court, which is in the best position to assess the atmosphere of the community and to judge the necessity of the requested change. *Commonwealth v. Karenbauer,* 552 Pa. 420, 715 A.2d 1086 (1998), *certiorari denied,* —— U.S. ——, 119 S.Ct. 1258, 143 L.Ed.2d 354 (1999). A grant or refusal of a change of venue will not be disturbed absent an abuse of discretion. *Commonwealth v. Counterman,* 553 Pa. 370, 719 A.2d 284 (1998). Prejudicial pre-trial publicity does not warrant a change of venue unless it is shown that the publicity

was so extensive, sustained, and pervasive that the community must be deemed to have been saturated with it and that there was insufficient time between the publicity and the trial for any prejudice to have dissipated. *Karenbauer.*

■ Our review of the record in this case reveals that the trial court did not abuse its discretion by denying Salameh's motion for change of venue. The fact that six out of forty-four potential jurors were aware of Salameh's prior convictions does not rise to the level where the publicity was so pervasive that the community must be deemed to have been saturated with it. Therefore, the trial court did not abuse its discretion by refusing to disqualify these six jurors for cause.

Accordingly, we reject Salameh's contention that the trial court erred by denying his motion for change of venue.

#### 4. Voir Dire Questions

Salameh argues that the trial court erred when it refused several requested voir dire questions designed to ferret out potential bias among the jurors thereby prejudicing the final panel and Salameh's ability to intelligently exercise his preemptory challenges. Specifically, Salameh contends that the trial court erred in refusing to question the potential jurors regarding their views towards Arabs, their knowledge of Salameh's drug prescription practices, and details of their political associations and backgrounds. Salameh also argues that the trial court erred by refusing Salameh's request to conduct individual voir dire to allow the development of the requested information.

■ The manner in which voir dire will be conducted is left the discretion of the trial court and will be reversed only when the record indicates an abuse of discretion. *Commonwealth v. Chambers,* 546 Pa. 370, 685 A.2d 96 (1996), *certiorari denied,* —— U.S. ——, 118 S.Ct. 90, 139 L.Ed.2d 46 (1997). The decision on whether counsel may propose their own ques-

tions of potential jurors during voir dire is a matter left solely within the discretion of the trial court. *Commonwealth v. Paolello,* 542 Pa. 47, 665 A.2d 439 (1995).

■ Our review of the record reveals that the trial court did not abuse its discretion by refusing to ask certain questions during voir dire. With respect to Salameh's proposed question regarding the potential jurors views toward Arabs, the record shows that the trial court specifically asked the potential jurors if any of them had any particular prejudices against people with an ethnic background that comes from the Arabic/Palestinian/Jordanian areas. R.R. at 50b. The record also reveals that the trial court thoroughly covered the issue of the potential jurors' knowledge of Salameh's drug prescription practices when the trial court asked questions regarding Salameh's prior criminal convictions which included his conviction for violation of drug prescription practices. R.R. at 6b—114b. Finally, the record shows that the trial court questioned the potential jurors regarding their political associations and backgrounds. R.R. at 12b – 19b.

Accordingly, we hold that the trial did not err by refusing to ask three of Salameh's proposed voir dire questions and by refusing to permit Salameh to conduct individual voir dire.

#### B. Motion for Non–Suit/Directed Verdict

Salameh argues that the trial court erred in granting the defendants' motions for non-suit and/or directed verdict on the counts concerning defamation, invasion of privacy, and commercial disparagement.

In response, defendants point out that the trial transcript wherein counsel argued defendants' motion for a directed verdict and the trial court's ruling on the same was not transcribed; therefore, there is no record of whether Salameh made timely objections, raised certain issues to the trial court or the trial court's reasoning. Accordingly, defendants contend that Sala-

meh has waived this issue on appeal. We agree.

▇▇▇ It is the responsibility of the appellant to supply this Court with a *complete* record for purposes of review. *Smith v. Smith,* 431 Pa.Super. 588, 637 A.2d 622 (1993), *petition for allowance of appeal denied,* 539 Pa. 680, 652 A.2d 1325 (1994). The failure by an appellant to insure that the original record certified for appeal contains sufficient information to conduct a proper review constitutes waiver of the issue(s) sought to be examined. *Id.*

▇▇▇ Herein, Salameh has clearly failed to supply a complete record for purposes of review. Therefore, we will not address the issue of whether the trial court erred by granting defendants' motion for directed verdict.

## C. Preclusion of Evidence of Prejudice

Next, Salameh contends that he is entitled to a new trial because the trial court improperly precluded evidence offered to establish defendants' prejudice. Specifically, Salameh notes the trial court's exclusion of the following allegedly prejudicial evidence: (1) the circulation of anti-Arab jokes among council members (R.R. at 462a—476(a)); (2) favorable treatment regarding the non-enforcement of parking requirements for non-Arabs, E.J. Julian and Joe Pintola (R.R. at 453a; 492a – 493a); (3) failure to allow reputation evidence by Salameh in response to attacks by City witnesses (R.R. at 534a); (4) failure to apply the "hostile witness" rule against the City solicitor (R.R. at 495a – 503a); (5) misapplication of the adverse party rule (R.R. at 495a – 503a); (6) failure to permit impeaching hearsay statements and otherwise failing to apply hearsay exceptions (R.R. at 490a – 491a); and (7) failure to permit damages testimony re-

garding profit loss, cash flow charts and increased contractor charges related to the delay in the permit processing (R.R. at 488a – 489a; 534a).

▇▇▇ Questions concerning the admission or exclusion of evidence are within the sound discretion of the trial court, and its evidentiary rulings will not be reversed absent a clear abuse of discretion. *Burkholz v. Commonwealth of Pennsylvania, Department of Transportation,* 667 A.2d 513, 517 (Pa.Cmwlth.1995). The improper exclusion of evidence is grounds for a new trial. *Eldridge v. Melcher,* 226 Pa.Super. 381, 313 A.2d 750 (1973). Based on our review of the relevant parts of the record, we conclude that the trial court did not improperly exclude evidence; therefore, we hold that the trial court did not abuse its discretion and reject Salameh's arguments to the contrary.

## D. Judgment Notwithstanding the Verdict on Claim for Violation of Procedural Due Process

Salameh argues that he is entitled to judgment notwithstanding the verdict regarding his claims of procedural due process violations. Salameh contends, without citing to specific points in the record, that the record shows that there were clear violations of procedural due process with respect to his request for a building permit. Salameh argues further that because violations of clearly established due process rights are to determined as a matter of law, since procedural due process violations do not require evidence of wrongful motive, Salameh was entitled to judgment notwithstanding the verdict.

▇▇▇ Our review of a trial court's ruling on a motion for judgment n.o.v. or for a new trial is limited to determining whether the trial court abused its discre-

tion or committed an error of law. *Marker v. Department of Transportation*, 677 A.2d 345 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 546 Pa. 671, 685 A.2d 549 (1996). In deciding whether judgment n.o.v. is warranted, the reviewing court must consider the evidence and any conflicts therein in a light most favorable to the verdict winner who is afforded the benefit of all reasonable factual inferences that arise from the evidence. *Id.* Judgment n.o.v. will be granted only in clear cases where the facts are such that no two reasonable persons could fail to agree that the verdict was improper. *Id.*

 Herein, the trial court did not abuse its discretion by not granting Salameh a judgment n.o.v. on his procedural due process claims. While Salameh is arguing that he was denied procedural due process with respect to his request for a building permit, the substance of Salameh's complaint against defendants is that defendants violated Salameh's rights by their misconduct in reviewing and denying his request for a building permit. Whether Salameh's rights were violated clearly was a question for the jury. Moreover, in this Commonwealth, there are certain mechanisms in place for an aggrieved party to appeal the denial or grant of a building permit.[7] Salameh took advantage of these mechanisms and appealed the denial of the building permit to the trial court and Salameh was ultimately issued a permit. Accordingly, we hold that Salameh was not entitled to judgment n.o.v. on his claims of procedural due process violations.

### E. Jury Instructions

Salameh argues that the lower court erred in refusing to issue his requested jury instructions and by otherwise issuing erroneous jury instructions.

 A motion for a new trial should be granted where the reading of the jury charge against the background of the evidence reveals that the jury charge might have been prejudicial to the complaining party. *Balent v. City of Wilkes–Barre*, 167 Pa.Cmwlth. 556, 648 A.2d 1273 (1994), *reversed on other grounds*, 542 Pa. 555, 669 A.2d 309 (1995). A refusal to give a proper instruction request by a party is grounds for a new trial only if the substance of that instruction was not otherwise covered by the trial court's general charge. *Ligon v. Middletown Area School District*, 136 Pa.Cmwlth. 566, 584 A.2d 376 (1990). An error in a jury charge is sufficient ground for a new trial if the charge, taken as a whole, is inadequate, unclear, or has the tendency to mislead or confuse rather than to clarify a material issue. *Von der Heide v. Department of Transportation*, 553 Pa. 120, 718 A.2d 286 (1998).

 Herein, the trial court recognized that counsel for both sides submitted extensive very learned suggested points for charge. R.R. at 192b. However, upon review of the suggested points for charge, the trial court determined that the general charge given by the trial court covered the specific point raised by each counsel and that it would lead to confusion to read a lengthy list of principles of law to the jury. *Id.* Our review of the jury charge given by the trial court in this case reveals that

---

**7.** We note that a party asserting that his or her procedural due process rights have been violated must establish that the state procedure for challenging the deprivation does not satisfy the requirements of procedural due process. *DeBlasio v. Zoning Board of Adjustment for the Township of West Amwell*, 53 F.3d 592, 597 (3d Cir.), *certiorari denied*, 516 U.S. 937, 116 S.Ct. 352, 133 L.Ed.2d 247 (1995). "[A] state provides adequate due process when it provides 'reasonable remedies to

rectify a legal error by a local administrative body.' " *Bello v. Bethel Park*, 840 F.2d 1124, 1128 (3d Cir.), *certiorari denied*, 488 U.S. 851, 109 S.Ct. 134, 102 L.Ed.2d 107 (1988) (citations omitted). Pennsylvania clearly provides such remedies. *Id.* "When a state 'affords a full judicial mechanism with which to challenge the administrative decision' in question, the state provides adequate procedural due process, whether or not the plaintiff avails him or herself of the provided appeal mechanism." *DeBlasio* at 597.

the requested points of charge which Salameh contends were not included were sufficiently covered in the trial court's general charge. *See* R.R. at 154b – 184b. In instructing a jury, the trial court need not follow proposed instructions verbatim and may choose to ignore them entirely. *Butler v. Kiwi, S.A.*, 412 Pa.Super. 591, 604 A.2d 270, *petition for allowance of appeal denied*, 531 Pa. 650, 613 A.2d 556 (1992). Accordingly, we reject Salameh's contention that he is entitled to a new trial on the basis of the trial court's alleged failure to include certain points of charge in the general charge to the jury.

## IV. CONCLUSION

Accordingly, we affirm the order of the trial court.

### O R D E R

AND NOW, this 7th day of May, 1999, the order of the Court of Common Pleas of Washington County, dated March 10, 1997, at C.D. Nos. 1986–4426 and 1988–1944, is affirmed.