490 A.2d 912

**Alan J. JENKS**

v.

**AVCO CORPORATION, Appellant.**

**Alan J. JENKS, Appellant,**

v.

**AVCO CORPORATION.**

Superior Court of Pennsylvania.

Argued Oct. 17, 1984.

Filed March 29, 1985.

544

Karl K. Baldys, Williamsport, for appellant (at 1982) and appellee (at 1436).

Charles J. McKelvey, Williamsport, and Francis J. Naphin, Williamsport, for appellant (at 1436) and appellee (at 1982).

Before WIEAND, DEL SOLE and POPOVICH, JJ.

POPOVICH, Judge:

This case involves two appeals from an order of the Court of Common Pleas of Lycoming County dismissing the exceptions of both parties and entering a judgment absolute.

Alan J. Jenks, "Jenks", filed a complaint with the Pennsylvania Human Relations Commission, "HRC", alleging that Avco Corporation, "Avco", had unlawfully discriminated against him under the Pennsylvania Human Relations Act, "Act", by denying equal employment opportunities for the handicapped. Jenks suffers partial paralysis below his waist as a result of an automobile accident which occurred when Jenks was in high school. Within one year of the filing of the complaint before them, the HRC entered a certification conferring jurisdiction in the Court of Common Pleas. 43 P.S. § 962(c). Jenks then filed the instant action seeking that the Court order Avco to hire him, and award

him *inter alia* seniority privileges, back pay, and counsel fees.[1]

The issues of liability and damages were bifurcated, and, following a non-jury trial, the court found Jenks' handicap not to be job-related and held that Avco must accommodate Jenks by permitting him to use his own hydraulic cart while working. The judge ordered Avco to hire Jenks in either of two specific jobs, specifying Jenks would be subject to the time production requirements and general job discipline requirements applicable to all other employees. Following the litigation of the issue of damages, the trial court entered an award in favor of Jenks in the amount of $25,-108.36 plus costs and 6% interest and stated Jenks should have job seniority and related benefits consistent with a hiring date of August 23, 1977.

Both Avco and Jenks have filed appeals in this court. Avco raises eight issues: (1) whether Jenks can function properly in either of the two jobs; (2) whether the handicap is a job-related handicap; (3) whether Jenks is the best able and most competent applicant; (4) whether the regulations of the HRC are in direct conflict with the express provisions of the Human Relations Act; (5) whether the court-ordered accommodation permitting Jenks to use a hydraulic cart violates the seniority provisions of Avco's Labor Agreement; (6) whether this same accommodation violates OSHA Standards; (7) whether Avco's refusal to hire Jenks was justifiable by a legitimate business necessity; and, (8) whether Avco is entitled to a set-off against the back pay wages for an amount equal to Jenks' earning potential. On the other hand, Jenks' appeal is concerned only with the amount of his award and he alleges the trial court erred in failing to award him: (1) counsel fees; (2) expert witness fees and costs; (3) damages for embarrassment and humiliation; and, (4) additional prejudgment interest. Jenks fur-

1. It is this rather unique procedural background which gives rise to the instant appeal being before the Superior Court rather than the Commonwealth Court.

ther contends the trial judge erred in applying the principle of mitigation of damages.

██ We begin our analysis by noting that findings of fact by a trial judge are accorded the same weight as a jury verdict and our scope of review is limited to examining whether the findings are supported by competent evidence. *Brenna v. Nationwide Ins. Co.*, 294 Pa.Super. 564, 440 A.2d 609 (1982). We have carefully reviewed the entire record and find the judge's findings to be so supported.

██ Avco contends the trial judge erred in finding Jenks to be physically capable, with reasonable accommodation, of performing the work of a bench grinder/polisher in Department 54 and a production inspector in the 50 Series Inspection Area. Although Avco may disagree with the ultimate conclusion, the record does adequately support it. Jenks wears long leg braces with hinges at the knees which lock when he stands and walks. He uses Canadian crutches and walks by placing both of the crutches forward, throwing his lower limbs forward between the crutches and then planting his feet on the floor while tilting his body forward and moving the crutches ahead once again. When walking, he is able to proceed at a speed faster than a normal walking pace. He can go up and down stairs and stand or sit for long periods of time. Although limited in the amount of weight he can lift, the use of the hydraulic cart would remedy this problem. Jenks has a machinist general degree from a community college and job experience. The trial court specifically found him to be quiet and non-abrasive yet determined to earn a living as a machinist.

██ Avco further argues that Jenks was not the most competent applicant to perform the job. The testimony revealed that after the date of Jenks' application for employment, Avco did hire others with equal or lesser training, education and experience. Moreover, the employer has the burden of proving the handicapped individual *not* to be the best able and most competent to perform the job. *General Elec. Corp. v. Commonwealth Human Relations*

548

*Comm'n.*, 469 Pa. 292, 365 A.2d 649 (1976). We do not find error in the trial judge's ruling that Avco did not sustain this burden.

In the alternative, Avco argues that it was not required to hire Jenks because his handicap was a "job related handicap". Section 5 of the Act provides:

It shall be unlawful practice, unless based upon a bona fide occupational qualification . . . :

(a) For any employer because of the . . . *non-job related handicap or disability* of any individual to refuse to hire or employ, or to bar or to discharge from employment such individual, or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment, if the individual is the best able and most competent to perform the services required.

43 P.S. § 955 (emphasis added).

The term "non-job related handicap or disability" is defined under the Act as meaning:

any handicap or disability which does not substantially interfere with the ability to perform the essential functions of the employment which a handicapped person applies for, is engaged in or has been engaged in. Uninsurability or increased cost of insurance under a group or employe insurance plan does not render a handicap or disability job related. 43 P.S. § 954(p).

Avco cites a myriad of cases from various jurisdictions for the proposition that a handicap which prevents a job applicant from performing the essential functions of the job justifies a refusal to hire. We do not dispute this theory. However, when *reasonable accommodation* is made, the trial court, relying on expert testimony, found that Jenks had the ability to perform the essential functions.

██ In reaching its conclusion that Avco was required to make reasonable accommodation, the trial court relied, in part, upon various regulations adopted by the HRC and found at 16 Pa.Code Chapter 44. Avco argues such regula-

tions were adopted after Jenks applied for employment and hence do not apply. It is true that our appellate courts have not applied these regulations to cases whose cause of action arose prior to the effective date of the regulations. *National Railroad Passenger Corp. v. Pennsylvania Human Relations Comm'n.,* 70 Pa.Commonwealth Ct. 62, 452 A.2d 301 (1982), and *Philadelphia Elec. Co. v. Pennsylvania Human Relations Comm'n.,* 68 Pa.Commonwealth Ct. 212, 448 A.2d 701 (1982). We find, however, that the Act itself requires that reasonable accommodations be made by an employer.

[6, 7] We are bound to construe the Act "liberally for the accomplishment of the purposes thereof" [43 P.S. § 962(a) ] and to read it "in a manner which will effectuate its purpose, a task which compels consideration of more than the statute's literal words." *Pennsylvania Human Relations Comm'n. v. Chester Sch. Dist.,* 427 Pa. 157, 166–167, 233 A.2d 290, 295 (1967). One purpose of this Act is to "foster the employment of all individuals in accordance with their *fullest capacities* regardless of their ... handicap." 43 P.S. § 952(b) (Emphasis added). The reason for this is because the "denial of equal employment ... opportunities because of such discrimination, and the consequent failure to utilize the productive capacities of individuals to their *fullest extent,* deprives large segments of the population of the Commonwealth of earnings necessary to maintain decent standards of living, and necessitates their resort to public relief." 43 P.S. § 952(a) (Emphasis added).

Were we to adopt the reasoning that reasonable accommodation is not required, the above purpose would be totally frustrated. For example, any time the disability involved one of the senses or faculties used in the performance of the job, the individual could automatically be denied employment by the very literal interpretation that the handicap itself is "job related". Under this reasoning, an applicant with a sight impairment could be denied employment because *without* his corrective lens he was unable to perform the job's essential functions and an employer would

not need to make any accommodation for the wearing of glasses. Such a result surely negates the purpose of fostering full employment. We hold that the Act requires employers to make reasonable accommodations; the proper inquiry then becomes what constitutes reasonable accommodation.

In *Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), the United States Supreme Court in interpreting a federal statute, the Rehabilitation Act of 1973, held that an "otherwise qualified" handicapped individual is one who can meet all of a program's requirements in spite of a handicap. However, the Court recognized that technological advances can be expected to enhance future opportunities and "situations may arise where a refusal to modify an existing program might become unreasonable and discriminatory." 442 U.S. at 413–14, 99 S.Ct. at 2370, 60 L.Ed.2d at 992.

Avco has not been ordered to modify the existing job requirements; in fact, the trial judge's order makes it clear that Jenks must meet normal production requirements and general job requirements.

An otherwise reasonable accommodation could become an unreasonable one if it imposes an undue hardship on the employer. *Strathie v. Pennsylvania Department of Transportation*, 716 F.2d 227 (3d Cir.1983). Avco argues Jenks' accommodation imposes such an undue hardship for a variety of reasons, all of which were considered and rejected by the trial court. For instance, Avco contends the use of a hydraulic cart by Jenks in performing his job will create problems between Avco and the UAW because other employees will demand, under union contract, the same accommodation: i.e., the use of a cart. We agree with the trial court's rationale that the accommodation has been made for the individual, not the job. The court has simply not created a new job description. Avco further states Jenks' hydraulic cart will be disruptive and unsafe. We note that the trial court did tour Avco's facility and observed other similar carts to be in use elsewhere in the

plant. The trial judge was aware that some congested areas would have to be cleared to permit a sufficient aisle area but found this could be done "without significant impact." The trial court specifically rejected other proposals made by Jenks for accommodations because these might impair efficient operation or cause serious labor problems.

Avco similarly argues that Jenks' use of a hydraulic cart will violate OSHA Standards. An examination of the record reveals the OSHA Standards to which Avco's expert referred merely require aisles to be kept clear, in good repair and with no obstruction. The trial judge specifically found it would create no undue burden for Avco to create aisles in the areas specified.

The trial court rejected Avco's theory that it had legitimate justification in its refusal to hire Jenks due to the increased risks he would create for his own safety and the safety of other employees. We recognize the legislature would not have intended the Act to be interpreted as requiring employers to hire a handicapped person where the safety of others would be put in jeopardy. The safety risks in this case, however, are not of the kind such as the Court considered in *National Railroad Passenger Corp. v. Pennsylvania Human Relations Comm'n., supra.* In that case, Commonwealth Court found that the railroad need not provide statistical information demonstrating the risk but was justified in refusing to hire an individual with an artificial eye. The Court did look at the applicant's reduced field of vision and considered the qualifications required of a trackman and concluded the applicant's handicap was "job related." The safety risks in our case are far more tenuous.

The trial court does concede that there may be some increased risks but finds them to be *de minimis.* The court's conclusion is adequately supported by Jenks' own safety record and expert evidence concerning the safety records of handicapped workers in general.

■ The remaining issues all concern the amount awarded to Jenks. We find that the opinion and order of the trial court, dated February 16, 1983, adequately discusses and properly disposes of the issues of mitigation of damages, counsel and expert witness fees, and damages for humiliation and embarrassment. As to Jenks' contention that the trial court erred by not granting more than 6% interest, we note merely that we can find no abuse of discretion in an application of interest at the legal rate. Furthermore, the trial judge had previously held that Avco's refusal to hire was based on its good faith belief that either its manufacturing process would be adversely affected or intolerable labor problems would result.

Order affirmed.