## Buckno v. Penn Linen & Uniform Service Inc.

*Richard J. Orloski,* for plaintiff.
*Steven A. Bergstein,* for defendant.

WALLITSCH, *J.,* April 7, 1992—The instant matter comes before the court on the defendant's motion for

summary judgment. In these cases, our standard of review is quite clear. Summary judgment shall be granted when there are no genuine issues of material fact in dispute; the party seeking the motion is entitled to a judgment as a matter of law; and the record must be examined in the light most favorable to the non-moving party. *Mullen v. Borough of Parkesburg,* 132 Pa. Commw. 321, 572 A.2d 859 (1990). To defeat a motion for summary judgment, there must be an issue of fact in dispute which is genuine and material. When confronted by a properly supported motion for summary judgment, the opposing party is required to produce some contrary evidence which could support a favorable verdict. The party opposing this motion may not rest on mere denials of the facts identified by the movant as supportive of its position, nor upon the vague and amorphous argument that the records somewhere contain fact sufficient to support its claims. *Washington Federal Savings & Loan Association v. Stein,* 357 Pa. Super. 286, 515 A.2d 980 (1986). See also, *Phaff v. Gerner,* 451 Pa. 146, 303 A.2d 826 (1973); *Samarin v. GAF Corp.,* 391 Pa. Super. 340, 571 A.2d 398 (1989), and *Roland v. Kravco Inc.,* 355 Pa. Super. 493, 513 A.2d 1029 (1986). In the instant case, all plaintiff has done in her brief is to state that the "defendant has failed to meet its burden" or that "genuine issues of material fact exist precluding summary judgment." A review of the record produced by both sides does not contain facts that would support a genuine issue of material fact concerning the issues in this case and, therefore, we are constrained to grant defendant's motion for summary judgment.

The defendant seeks summary judgment under a procedural and a substantive theory. We will address each

in turn. The first issue argued by the defendant is that the applicable statute of limitations bars the plaintiff's claims. Defendant argues that, since the plaintiff failed to file the instant complaint within two years from the date of her termination from the defendant's employ, her action is barred.

It is now established that a two-year statute of limitations governs claims alleging discrimination under the Pennsylvania Human Relations Act, 43 P.S. §951, et seq. *Raleigh v. Westinghouse Electric Corp.*, 379 Pa. Super. 606, 550 A.2d 1013 (1988), *appeal denied*, 522 Pa. 613, 563 A.2d 499 (1989). However, defendant, in arguing that the statute of limitations bars this claim, neglects the mandates of the PHRA with regard to obtaining a notice from the Pennsylvania Human Relations Commission before the plaintiff is allowed to bring an action in the Court of Common Pleas. In the present case, the plaintiff did not obtain such a notice until February 6, 1990, by letter of Carolee Kapakiwa, Human Relations representative. Therefore, since the letter reinstating the PHRC claim was sent to plaintiff on February 6, 1990, the complaint was filed on July 13, 1990, the action is not barred by the applicable statute of limitations. See *Raleigh, supra* at 608, 550 A.2d at 1014.

While it is true that plaintiff agreed to hold the PHRC complaint "in abeyance," that was a right afforded to her by the PHRC in a letter dated October 13, 1987. (See both letters which comprise Exhibit B in plaintiff's brief.) To bar plaintiff's suit because she did nothing more than agree to hold the matter in abeyance, at the suggestion of the PHRC, would be unduly harsh. We are mindful, of course, of the hardship that such delays can have on defendants. However, in this case, the de-

fendant knew of the action by the plaintiff because of the complaint filed in federal court alleging a violation of the PHRA. Therefore, the defendant cannot be said to be prejudiced. The filing of the federal complaint put defendant on notice as to the claims that plaintiff now seeks to pursue in state court.

We next proceed to the substantive theory of defendant's motion. The first issue to be resolved is whether or not the plaintiff was "handicapped or disabled" under the Pennsylvania Human Relations Act. The term "handicapped or disabled person" is not defined in the PHRA but, instead, defined in regulations found at 16 Pa. Code §44.4, which provides as follows:

"Handicapped or disabled person—includes the following: (i) a person who: (A) has a physical or mental impairment which substantially limits one or more major life activities;..."

The terms "physical or mental impairment" is further defined as:

"a physiological disorder or condition, causmatic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive; genitourinary; hemic and lymphatic; skin, and endocrine or a mental or psychological disorder such as mental illness, and specific learning disabilities." 16 Pa. Code §44.4[2](i)(A).

Further, the regulations define "major life activities" as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 16 Pa. Code §44.4[2](ii)(B). It is to these definitions that we first turn.

The defendant, for the purposes of the summary judgment motion, concedes that plaintiff's epilepsy constitutes a "physical or mental impairment" as that term is defined at 16 Pa. Code §44.4(ii)(A). However, the defendant does not concede that this impairment substantially limits one or more of plaintiff's major life activities. Although it is clear from the evidence that the epilepsy itself does not affect the plaintiff's ability to perform manual tasks and work, the medication that she has been given, at least arguably, creates substantial limitation on her ability to perform manual tasks and to work. Although Dr. Redenbaugh, plaintiff's treating neurologist, did not categorically state that her medication affected the rate at which plaintiff could work, we believe that there is a genuine question as to whether the medication was in fact the cause of plaintiff's slow work speed. This issue would have to be determined by a jury. Therefore, for the purpose of this motion for summary judgment, we will accept that the epilepsy does substantially limit one or more of plaintiff's major life activities, as defined in the regulations.

In Pennsylvania, the law is clear that once a plaintiff in an employment discrimination action establishes a prima facie case that she is handicapped or disabled (a fact that we assume for purpose of this motion for summary judgment), then the burden shifts to the employer to establish a legitimate, non-discriminatory reason for the termination of employment. The employer meets this burden if it shows that the plaintiff's disability is "job-related." *Jenks v. Avco Corp.,* 340 Pa. Super. 542, 490 A.2d 912 (1985).

On the issue of whether a handicap is a "job-related handicap/disability" the *Jenks* case, *supra,* is instructive.

In that case, Avco argued that it was not required to hire Jenks because his handicap impacted on his ability to perform the requirements of his job. Section 5 of the PHRA provides as follows:

"It shall be unlawful practice, *unless based upon a bonafide occupational qualification ... (a) for any employer because of the ... non job-related handicap or disability* of any individual to refuse to hire or employ, or to bar or *to discharge from employment* such individual ... if the individual is the best able and most competent to perform the services required." 43 P.S. §955. (emphasis added)

The term "non-job related handicap or disability" is defined under the PHRA as meaning: "(a)ny handicap or disability which does not substantially interfere with the ability to perform the essential functions of the employment which a handicapped person applies for, is engaged in, or has been engaged in...." 43 P.S. §954(p).

Essentially, a handicap or disability which prevents a person from performing the essential functions of the job justifies a termination. If *reasonable accommodation,* however, can be made which would allow the person to perform the essential functions of the job, then termination is not appropriate. *Jenks, supra* at 550, 490 A.2d at 916. Here, the facts presented by the defendant show that the medication for the epilepsy prevented the plaintiff from performing the essential functions of her job and that reasonable accommodations were made to help her in this regard. Unfortunately, these accommodations were unsuccessful despite the best efforts of the defendant.

Ms. Buckno began her employment at the Penn Linen plant in the spring of 1968. She worked in an area where

she buttoned shirts which were then mechanically folded. She also folded shirts by hand. She continued at these tasks until 1977 or 1978. Around this time a new supervisor, Betty Trach, took over in the plaintiff's work area. This new supervisor and plaintiff had difficulties and the plaintiff asked for and received a transfer. A number of times plaintiff was told about her slow work rate. Plaintiff would also sort hangers when there was a slow down in work at the plant. At various times counters were used and results posted with plaintiff continually being below the work production of the other employees. Plaintiff was given numerous assignments, all with the same results. Between 1970 and 1986 the production standards continually increased. Plaintiff was just not able to do the work at the same rate as everyone else. Under *Jenks*, the defendant was obligated to try and accommodate the plaintiff as it did, but defendant could still require plaintiff to maintain the same production standards as everyone else. *Jenks, supra* at 550, 490 A.2d at 916. Therefore defendant did attempt to accommodate the plaintiff prior to termination.

Plaintiff proffered medical testimony that if she were required to do one job, over time her speed would improve. Plaintiff argues that because she was moved from job to job she was not given adequate time to develop this increased speed. However, she was not moved daily or weekly but worked at her different assignments for years. Defendant has an affirmative duty to try and find a way to keep a handicapped employee working under *Jenks*. However, plaintiff was continually unable to meet the requirements that other employees were required to meet. We find as a matter of law that defendant made reasonable accommodations for plaintiff, which were unsuccessful.

As the court in *Jenks, supra,* indicated, plaintiff must meet normal production requirements in general job requirements and, in the case at bar, it is clear, that despite everyone's best efforts, the plaintiff was not able to meet these production requirements.

It is obvious, but probably should be stated in any event, that we certainly empathize with the plaintiff who was terminated from her employment after 18 years of dedicated and conscientious service for the defendant. The defendant admits that it was never aware of any reason other than the epilepsy medication which caused her slow work speed. In reaching our decision, we find no fault with her or her actions. If the record had been made, or could have been made, to establish a genuine issue of material fact, this court would have certainly permitted a jury to decide this case. However, the mere assertions made in the brief filed on behalf of the plaintiff, are not sufficient to create a material issue when none, in fact, exists.

## ORDER

And now, April 7, 1992, upon consideration of the written briefs and oral argument of counsel, and for the reasons expressed in the accompanying opinion it is ordered that the summary judgment motion of defendant, Penn Linen & Uniform Service Inc. is granted.