747 A.2d 862

**Geraldine TROWBRIDGE and Gordon Trowbridge, her husband, Appellants,**

**v.**

**The SCRANTON ARTIFICIAL LIMB COMPANY, Appellee.**

Supreme Court of Pennsylvania.

Argued April 26, 1999.

Decided March 23, 2000.

Peter G. Loftus, Waverly, for Geraldine & Gordon Trowbridge.

Robert D. Mariani, Scranton, for Scranton Artificial Limb Co.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

NEWMAN, Justice.

Geraldine and Gordon Trowbridge (Appellants),[1] have appealed from the order of the Superior Court that affirmed the Order of Court of Common Pleas of Lackawanna County (trial court), which dismissed Appellant's Pennsylvania Human Relations Act complaint. For the reasons that follow, we reverse the order of the Superior Court and remand this matter to the Court of Common Pleas of Lackawanna County.

### FACTS AND PROCEDURAL HISTORY

The Scranton Artificial Limb Company (Appellee) employed Appellant, in a clerical capacity, from June 3, 1975 through February 6, 1989. Throughout her employment, Appellant suffered from muscular dystrophy, a progressive disease characterized by the wasting of one's muscles, and she was confined to a wheelchair. On February 6, 1989, Herbert Niehuus, the owner of Appellee Company, told Appellant that she would be laid off from her job with Appellee in two weeks. She resigned the same day.

On September 8, 1989, Appellant applied for Social Security Administration (SSA) disability insurance benefits. In her application for benefits, Appellant stated, under penalty of perjury, that she "became unable to work because of [her]

1. For the sake of clarity, we will refer to Geraldine Trowbridge as "Appellant" throughout this opinion.

disabling condition [muscular dystrophy] on February 6, 1988."[2] In order to be entitled to disability insurance benefit payments, an applicant must be suffering from a "disability" that is defined in 42 U.S.C. § 423(d)(1)(A) as the "inability to engage in *any substantial gainful activity* by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." (Emphasis added). Appellant's application for SSA disability benefits was approved, and she has received those benefits continuously since 1989.

On July 9, 1990 (seventeen months after the termination of her job), Appellant filed the lawsuit before this Court today. In it, she claimed that the termination of her employment with Appellee was illegal and discriminatory, in violation of the provisions of the Pennsylvania Human Relations Act (PHRA).[3] Section 955(a) of the PHRA provides that it shall be an unlawful discriminatory practice for any employer to discharge from employment any individual because of a "non-job related handicap or disability." A non-job related handicap or disability means a handicap or disability "which *does not substantially interfere* with the ability to perform the essential functions" of the individual's employment. 43 P.S. § 954(p) (emphasis added).

Appellee moved for summary judgment on Appellant's PHRA claim. The trial court granted the motion, and dismissed Appellant's complaint, on January 27, 1997. The trial court, applying the doctrine of judicial estoppel, found that Appellant's representations to the SSA, that she was unable to work because of her disability, were irreconcilable with a PHRA claim, which alleged that her disability did not substantially interfere with her ability to perform her job.

On appeal, the Superior Court affirmed the trial court in an unpublished opinion. The Superior Court found that Appellant successfully claimed under the SSA statute that she was

---

2. The date of February 6, 1988 was an error. Appellant later stated in her deposition that the correct date was February 6, 1989.

3. 43 P.S. §§ 951–963.

unable to perform any substantial gainful activity as of February 6, 1989. They then examined her claim under the PHRA, claiming that she suffered from a disability that did not substantially interfere with her ability to perform the essential functions of her job, and they found that the latter assertion directly contradicted the former. The court applied the doctrine of judicial estoppel, and held that to permit Appellant to contradict a statement made under penalty of perjury would flaunt a fundamental assumption made in the judicial system; that assertions made under oath are true. Accordingly, the court found that Appellant failed to establish a *prima facie* case of discriminatory discharge, and the trial court appropriately entered a summary judgment.

We granted allocatur to consider the question of whether the doctrine of judicial estoppel applies to bar Appellant's claim pursuant to the PHRA when she had previously applied for and received Social Security disability insurance benefits based on her sworn statement that she was unable to work because of her muscular dystrophy.

## DISCUSSION

■ Because this is an appeal from the grant of a motion for summary judgment, our standard of review is well settled. Summary judgment may be granted only in the clearest of cases where the record shows that there are no genuine issues of material fact and also demonstrates that the moving party is entitled to judgment as a matter of law. *P.J.S. v. Pennsylvania State Ethics Commission,* 555 Pa. 149, 723 A.2d 174, 176 (1999).

■ We turn now to the issue before us and to the doctrine of judicial estoppel. As a general rule, a party to an action is estopped from assuming a position inconsistent with his or her assertion in a previous action, if his or her contention was successfully maintained. *Associated Hospital Service of Philadelphia v. Pustilnik,* 497 Pa. 221, 439 A.2d 1149, 1151 (1981). "Federal courts have long applied this principle of estoppel where litigants 'play fast and loose' with the courts by switch-

ing legal positions to suit their own ends." *Ligon v. Middletown Area School District,* 136 Pa.Cmwlth. 566, 584 A.2d 376, 380 (1990). *See for example: Government of the Virgin Islands v. Paniagua,* 922 F.2d 178 (3 rd Cir.1990); *Murray v. Silberstein,* 882 F.2d 61 (3 rd Cir.1989). The purpose of this doctrine is to uphold the integrity of the courts by "preventing parties from abusing the judicial process by changing positions as the moment requires." *Gross v. City of Pittsburgh,* 686 A.2d 864, 867 (Pa.Cmwlth.1996). In *Murray v. Silberstein, supra,* for example, the court judicially estopped the plaintiff from seeking monetary damages after arguing earlier that a court should enter a preliminary injunction because damages were unavailable to him. Likewise, in *Thompson v. Anderson,* 429 Pa.Super. 532, 632 A.2d 1349 (1993), the plaintiff was estopped from claiming that defendant's conduct was negligent after successfully maintaining in an earlier proceeding that the same conduct was intentional. (Plaintiff claimed she was injured after she slipped off the hood of a car driven by defendant.) In *Gross v. City of Pittsburgh, supra,* the court estopped the city of Pittsburgh from advancing a contrary position in a state eminent domain proceeding from that offered in a federal trial.

Earlier this year, but after the instant matter was argued, the United States Supreme Court decided the case of *Cleveland v. Policy Management Systems Corp.,* 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999). *Cleveland* involved the analogous, but not identical, issue concerning whether an individual's application for and receipt of social security disability benefits barred a subsequent lawsuit under the Americans with Disabilities Act of 1990(ADA). In *Cleveland,* the Supreme Court held that the pursuit, and receipt, of social security benefits did not automatically estop the recipient from pursuing an ADA claim. The Court based its decision, in large part, on the fact that the ADA defines a "qualified individual with a disability" to include a disabled person who can perform the essential functions of his or her job with a "reasonable accommodation." 42 U.S.C. § 12111(8). It was also noted by the Court that "when the SSA determines

whether an individual is disabled for SSDI [social security disability insurance] purposes, it does not take the possibility of 'reasonable accommodation' into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for SSDI." *Cleveland,* 119 S.Ct. at 1602. The Court then specifically found that "an ADA suit claiming that the plaintiff can perform her job *with reasonable accommodation* may well prove consistent with an SSDI claim that the plaintiff could not perform her own job (or other jobs) without it." *Id.* (emphasis added). The Court nevertheless stated that an ADA plaintiff could not simply ignore the apparent contradiction that arises out of the earlier SSA total disability claim, but must proffer a sufficient explanation to defeat a motion for summary judgment.

■ In the instant matter, Appellant successfully applied for social security disability insurance benefits. She then filed her lawsuit pursuant to the Pennsylvania Human Relations Act. However, the PHRA does not apply to prevent the discharge of an employee who does have a handicap that substantially interferes with that employee's ability to perform the essential functions of his or her employment. *See Buckno v. Penn Linen & Uniform Service, Inc.* 428 Pa.Super. 563, 631 A.2d 674, 676 (1993). Rather, the PHRA provides protection to one dismissed from employment because of a "non-job related handicap," 43 P.S. § 955, which means a handicap or disability "which does not substantially interfere with the ability to perform the essential functions" of the individual's employment. 43 P.S. § 954(p). Thus, Appellant would have to establish that, on February 6, 1989, her handicap did not "substantially interfere" with her ability to perform the essential functions of her job. Nevertheless, Appellant had previously claimed in her application for SSI benefits that she was, in fact, unable to work. This prior allegation was made under oath and resulted in the payment of total disability benefits, and this is difficult to reconcile with her claims in the instant lawsuit. In *Cleveland,* however, the Supreme Court permitted the Appellant to attempt to explain the apparent inconsistency of her positions by noting that an ADA claim in which one

could perform his or her job with reasonable accommodation may be consistent with a prior SSA disability claim.

Our PHRA statute does not specifically contain in the definition of "non-job related disability or handicap" the possibility of reasonable accommodations. However, the regulations relating to the Act do provide at 16 Pa.Code § 44.14(a) that an "employer shall make reasonable accommodations by modifying a job, including, but not limited to, modification of duties, scheduling, amount or nature of training, assistance provided, and the like, provided that the modification does not impose an undue hardship." When interpreting the Act, courts of this Commonwealth have noted that an employer is required to make a reasonable attempt to accommodate a handicapped or disabled employee. See *Commonwealth, Department of Transportation v. Pennsylvania Human Relations Commission*, 510 Pa. 401, 508 A.2d 1187 (1986)(in the absence of a finding that shifting other workers from their regular assignments whenever complainant needed assistance with heavy lifting would be a "reasonable accommodation" or an "undue hardship," this Court could not properly review whether complainant's disability was job-related); *Jenks v. Avco Corporation*, 340 Pa.Super. 542, 490 A.2d 912 (1985).

■ The Act is to be liberally construed to accomplish its purposes. 43 P.S. § 962(a). It is the public policy of the Commonwealth to "foster the employment of all individuals in accordance with their fullest capacities regardless of their . . . handicap or disability . . . " 43 P.S. § 952(b). Consequently, we hold today that Appellant's claims made in her application for social security disability insurance benefits do not automatically estop her from maintaining a claim under the PHRA. However, as the Supreme Court required in *Cleveland*, to defeat the motion for summary judgment, Appellant must sufficiently explain how the claims she made in her social security disability insurance benefits proceedings are consistent with her claims under the PHRA in which she stated that she suffers from a non-job related handicap or disability.

Accordingly, we reverse the order of the Superior Court, and we remand the Appellants' cause of action under the Pennsylvania Human Relations Act to the Court of Common Pleas of Lackawanna County for proceedings consistent with this opinion.

Justice CAPPY files a concurring opinion in which Justice ZAPPALA joins.

Chief Justice FLAHERTY files a dissenting opinion in which Justice CASTILLE joins.

CAPPY, Justice, concurring.

I join in the majority opinion, however, I write to disassociate myself from that part of the opinion that concludes that the Pennsylvania Human Relations Act requires a duty of reasonable accommodation. Jurisprudentially, I do not believe that the court is required to address this crucial question of statutory interpretation, resolution of which will have far reaching ramifications.

The reason it is not necessary for our court to reach the issue of reasonable accommodation is that Appellee has never contended that it is not required to reasonably accommodate under the PHRA. On the contrary, Appellee has implicitly, if not expressly, acknowledged its agreement to reasonably accommodate and has contended in every pleading filed on its behalf that it has accommodated Ms. Trowbridge. *See,* Answer and New Matter Raising Affirmative Defenses to Plaintiffs' Amended Complaint, Reproduced Record (RR), 40–43, 46–48, 50, 52, and especially, New Matter III, "Fulfillment of Duty To Make Reasonable Accommodations," RR. 59–61. Moreover, Appellee does not assert the lack of a duty to reasonably accommodate under the PHRA in its new matter.

The existence of a duty of reasonable accommodation under the PHRA is an issue of great import and involves serious consideration of the legislature's intent. The PHRA does not expressly recognize a duty to reasonably accommodate. I note that this court has suggested that silence on the part of the General Assembly is an indication that it did not intend to

grant a particular right, or to impose a particular duty. *See Wertz v. Chapman Township*, 559 Pa. 630, 741 A.2d 1272, 1999 Pa. Lexis 3750 (1999); *Hoy v. Angelone*, 554 Pa. 134, 720 A.2d 745 (1998). However, I also acknowledge that certain language in the PHRA could suggest a duty of reasonable accommodation. *See*, 43 P.S. § 952(b)(it is the public policy of the Commonwealth to "foster the employment of all individuals in accordance with their *fullest capacities* regardless of their ... handicap or disability....")(emphasis supplied); 43 P.S. § 952(a)("the ... failure to utilize the productive capacities of individuals to their *fullest extent*, deprives large segments of the population of the Commonwealth of necessary earnings....")(emphasis supplied); *see also, Jenks v. Avco*, 340 Pa.Super. 542, 490 A.2d 912, 916 (1985). Furthermore, the regulations promulgated pursuant to the PHRA mandate reasonable accommodation. 16 Pa.Code § 44.5(b), § 44.14(a).

Whether there exists a duty to reasonably accommodate under the PHRA is a decision of great consequence. I believe that the court should resolve this question only when it is squarely before us, and after the advocates have had an opportunity to fully brief and argue the issue.

Justice ZAPPALA joins this concurring opinion.

FLAHERTY, Chief Justice, dissenting.

I would affirm the decision of Superior Court. The doctrine of judicial estoppel is dispositive of this case. Appellant applied for disability benefits from the Social Security Administration on the basis of her representation, made under penalty of perjury, that she has a physical disability that rendered her completely unable to work as of February 6, 1989. The benefits were granted, and appellant continues to receive them. Appellant cannot now be heard to assert, in an attempt to collect damages against her former employer, that she was discharged from employment for an entirely inconsistent reason, to wit, that she was able to work but was discharged for illegal and discriminatory reasons. To allow appellant to maintain these irreconcilable positions cannot be

supported, and, indeed, undermines the judicial system. The memorandum decision of Superior Court, and the trial court as well, properly invoked judicial estoppel to block the assertion of these inconsistent legal claims. I would affirm per curiam.

Justice CASTILLE joins in this Dissenting Opinion.