# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph Hall and Rosemarie Hall,    :
his Wife,        :
        Appellants    :
    :
    v.    :
    :
Ryan Morris, Holly Sue Morris,    :
Shickshinny Volunteer Fire    :
Company, Inc.    :
    :
    v.    :
    :  No. 220 C.D. 2019
Rosemarie Hall    :  Argued: December 10, 2019

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON        FILED: January 6, 2020

Joseph and Rosemarie Hall (Appellants) appeal from the August 30, 2018 order of the Court of Common Pleas of Luzerne County (trial court) that denied Appellants' motion for post-trial relief. Upon review, we affirm.

This matter involves a civil suit for personal injuries arising out of a motor vehicle accident. Following trial, a jury determined Appellants were acting in the course and scope of their employment at the time of the accident, thereby precluding Appellants' civil claims pursuant to immunities provided by

Pennsylvania's Workers' Compensation Act (Act).[1]  We summarize the pertinent facts underlying this matter as follows.

On the evening of May 12, 2006, Appellants, who were members of the Shickshinny Volunteer Fire Company, Inc. (the Fire Company), learned of and responded to an emergency call from the Fire Company regarding an accident that had occurred at Mocanaqua Bridge in the Borough of Shickshinny (the Mocanaqua Bridge accident).  While responding to the Mocanaqua Bridge accident, Appellants themselves were involved in a motor vehicle accident with Ryan Morris (the accident), who was coincidentally also a volunteer with the Fire Company and was responding to the Mocanaqua Bridge accident at the time.

On November 17, 2006, Appellants filed a Complaint against Ryan Morris, Holly Sue Morris, the owner of the vehicle operated by Ryan Morris, and the Fire Company (collectively, Appellees) as defendants.[2]  After a lengthy period of discovery, the matter proceeded to a jury trial in January 2018.

The jury heard testimony from multiple witnesses at trial.  *See generally* Notes of Trial Testimony Commencing January 9, 2018 (N.T.).  Relevantly, Rosemarie Hall testified that, out of a desire to help the community, she applied to join the Fire Company to help with fundraisers and similar activities.  *See* N.T. at 250.  Ms. Hall testified that she and her husband Joseph Hall were ultimately approved and joined the Fire Company.  *Id.* at 251.  Ms. Hall testified that she never fought fires, but that she instead did some fundraisers and assisted and directed traffic at accident scenes.  *Id.* at 251 & 334.  She testified that the Fire Company issued her a coat, helmet, and a pager on which she would receive calls from the

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

[2] Appellant Rosemarie Hall was a plaintiff and an additional defendant in the underlying matter.

2

Luzerne County 911 and the Fire Company. *Id.* at 334-35. Ms. Hall testified that she and her husband both had their Fire Company pagers on them on the day of the accident. *Id.* at 254 & 339.

Ms. Hall also testified that on May 11, 2000, she received a certified letter from the Fire Company that explained that she could no longer be a member of the Fire Company until the Fire Company received a doctor's note stating that she was capable of being a firefighter. *See* N.T. at 252. Ms. Hall further testified that, although she did not obtain such a doctor's note and was not allowed to participate as a firefighter prior to the accident, she was still able to participate in the Fire Company's community activities such as fundraisers. *Id.* at 253.

Ms. Hall further testified that, on the date of the accident, she and Joseph Hall had intended to go from their apartment to their new house to inspect an apple tree and otherwise look the property over in preparation to move into the new house. N.T. at 256. She explained that, while waiting in her car for Joseph Hall to emerge from their apartment, the Fire Company's pager, which was with her in the car, went off and indicated an accident had occurred at the Mocanaqua Bridge. *Id.* at 259. Ms. Hall testified that thereafter Joseph Hall entered the vehicle, they pulled away from the apartment, and were then involved in the accident with Ryan Morris. *Id.* Ms. Hall confirmed that she signed a document in the hospital indicating that she was a co-employee acting as a member of the Fire Company at the time of the accident. *Id.* at 352.

Joseph Hall also testified at the trial of this matter. *See* N.T. at 384-430 & 779-80. Mr. Hall explained that he served as "fire police" for the Fire Company. *Id.* at 393. Mr. Hall testified that he would respond as part of the Fire Company to small fires and automobile accidents approximately 10 times a week. *Id.* at 400.

3

Like Rosemarie Hall, Mr. Hall testified to receiving a certified letter from the Fire Company that informed him that he could not participate in duties as a volunteer firefighter absent a doctor's letter stating he was able to do so. *Id.* at 394. Mr. Hall further testified that, on the date of the accident, he had his Fire Company pager with him, it was turned on, and he received two calls about the Mocanaqua Bridge accident. *Id.* at 397.

Beverly Ann Moore, a registered nurse and a member of the Fire Company, testified that she was among the first medical responders on the scene of the accident. N.T. at 444-48. Ms. Moore testified that she examined Joseph Hall at the scene and that he told her that, at the time of the accident, he and Rosemarie Hall had been responding to the Mocanaqua Bridge accident. *Id.* at 451. Ms. Moore testified that Rosemarie Hall also told her that she and Joseph Hall were responding to the Mocanaqua Bridge accident at the time the accident occurred. *Id.* at 452.

Fire Company volunteer firefighter Kevin McDaniels also testified. *See* N.T. at 471-81. Mr. McDaniels testified that he responded to the accident scene as well. *Id.* at 472-74. He testified that he heard Ms. Moore's conversation with Joseph Hall during which Mr. Hall explained that he and Rosemarie Hall had been responding to the Mocanaqua Bridge accident at the time of the accident. *Id.* at 476.

Debra McDaniels also testified that she responded to the accident. *See* N.T. at 482-94. Ms. McDaniels is an Emergency Medical Technician and a volunteer for the Fire Company. *Id.* at 482. Ms. McDaniels testified that she examined Mr. Hall, who explained to her that he and Rosemarie Hall were responding to the Mocanaqua Bridge accident at the time the accident occurred. *Id.* at 488-89.

4

Holly Sue Morris, the Fire Company's President, also testified. *See* N.T. at 602-42. Ms. Morris confirmed that, due to Rosemarie Hall's physical limitations, the Fire Company had asked Ms. Hall to obtain a doctor's note stating that she was capable of continuing as a firefighter. *Id.* at 612. Ms. Morris testified, however, that Rosemarie Hall was not precluded from any of her duties at the Fire Company, and further that neither Rosemarie nor Joseph Hall were ever told that they could not continue to perform their duties for the Fire Company prior to the accident. *Id.* at 612-13. Ms. Morris explained that Appellants were considered members of the Fire Company and had equipment, turnout gear, and pagers assigned to them at the time of the accident. *Id.* at 620. Ms. Morris further testified that she heard a conversation between Rosemarie and Joseph Hall that occurred in the back of the ambulance following the accident in which Appellants indicated they had been en route to the Mocanaqua Bridge accident at the time of the accident. *Id.* at 614.

Kevin Morris, the Fire Company's Fire Chief, also testified. *See* N.T. at 646-684. Mr. Morris testified that, at the time of the accident, Appellants were members of the Fire Company and responded to emergencies. *Id.* at 648-50. Mr. Morris testified that he heard Joseph Hall tell a third party that he had been responding to the Mocanaqua Bridge accident when he was involved in the accident. *Id.* at 657.

After hearing the above testimony and deliberating, the jury answered two special interrogatories[3] regarding whether Appellants were acting within the

---

[3] The jury answered the following special interrogatories:

1. Was Joseph Hall a volunteer fireman acting within the scope and course of his duties with the Shickshinny Volunteer Fire Company at the time of the automobile accident?

5

course and scope of their employment as volunteer firepersons with the Fire Company at the time of the accident in the affirmative. By virtue of the immunities contained within the Act, the jury's affirmative answer to the special interrogatories had the effect of defeating Appellants' civil claims. As a result, the jury returned a verdict in favor of Appellees. Appellants filed a post-trial motion seeking a new trial, which the trial court denied. The instant timely appeal followed.

Appellants raise multiple claims on appeal. First, Appellants claim the trial court erred by allowing the jury to determine issues regarding workers' compensation, over which the trial court lacked subject matter jurisdiction. *See* Appellants' Brief at 4 & 22-24. Second, Appellants argue that the trial court erred by failing to properly charge the jury regarding Section 601 of the Act, 77 P.S. § 1031.[4] *See id.* at 4 & 25-29. Next, Appellants allege the trial court erred by not precluding Appellees from employing an immunity defense based on judicial estoppel. *See id.* at 4 & 30-35. Finally, Appellants claim the trial court erred by not

---

_____ Yes          _____ No

2. Was Rosemarie Hall a volunteer fireman acting within the scope and course of her duties with the Shickshinny Volunteer Fire Company at the time of the automobile accident?

_____ Yes          _____ No

*If your answer to Questions 1 and 2 is "Yes", please do not answer any further questions and return to the Courtroom.*

*If your answer to Questions 1 or 2 is "No", please proceed to question 3.*

Reproduced Record at 629-30.

[4] Section 601 was added to the Act by the Act of December 5, 1974, P.L. 782, 77 P.S. § 1031.

6

overturning the jury's verdict and awarding Appellants a new trial because the jury's verdict was against the weight of the evidence. *See id.* at 4 & 35-38.

### *Motions for a New Trial*

Initially, we will discuss our review of the trial court's denial of Appellants' request for a new trial. As our Supreme Court has explained, "[t]rial courts have broad discretion to grant or deny a new trial." *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1121 (Pa. 2000). "[W]hen analyzing a decision by a trial court to grant or deny a new trial, the proper standard of review, ultimately, is whether the trial court abused its discretion." *Id.* at 1122.

The Supreme Court has explained:

> Each review of a challenge to a new trial order must begin with an analysis of the underlying conduct or omission by the trial court that formed the basis for the motion. There is a two-step process that a trial court must follow when responding to a request for new trial. First, the trial court must decide whether one or more mistakes occurred at trial. These mistakes might involve factual, legal, or discretionary matters. Second, if the trial court concludes that a mistake (or mistakes) occurred, it must determine whether the mistake was a sufficient basis for granting a new trial. The harmless error doctrine underlies every decision to grant or deny a new trial. A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake.

*Id.* (internal citations omitted). Further:

> To review the two-step process of the trial court for granting or denying a new trial, the appellate court must

7

also undertake a dual-pronged analysis. A review of a denial of a new trial requires the same analysis as a review of a grant. First, the appellate court must examine the decision of the trial court [as to whether] a mistake occurred.

. . . .

If the mistake involved a discretionary act, the appellate court will review for an abuse of discretion. If the mistake concerned an error of law, the court will scrutinize for legal error.

*Id.* at 1122–23 (internal citations, quotation marks, and brackets omitted).

### *Workers' Compensation Subject Matter Issue*

Appellants first argue that the trial court erred in allowing the jury to decide whether Appellants were acting within the scope and course of their duties for the Fire Company as their employer. *See* Appellants' Brief at 22-24. Appellants argue that the jury effectively determined whether Appellants were entitled to workers' compensation benefits, a determination reserved exclusively for a Workers' Compensation Judge (WCJ), and therefore beyond the subject matter jurisdiction of a court of common pleas. *See id.* We disagree.

Section 303 of the Act provides that the Act is the exclusive remedy of an injured employee against an employer as follows:

The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death . . . or occupational disease . . . .

8

77 P.S. § 481(a) (footnotes omitted). Section 601 of the Act expressly includes within its definition of "employe" members of volunteer fire companies injured "while actively engaged as firemen or while going to or returning from a fire which the fire company or fire department attended including travel from and the direct return to a fireman's home, place of business or other place where he shall have been when he received the call or alarm[.]" 77 P.S. § 1031(a)(1). Further, the Act provides immunity for the non-intentional negligent acts of co-workers. *See* 77 P.S. § 72.[5] Additionally, courts of common pleas retain subject matter jurisdiction to determine whether the Act bars an action. *Bell v. Kater*, 943 A.2d 293, 295 (Pa. Super. 2008).[6]

Here, Appellees pled immunity under the Act as an affirmative defense and alleged that Appellants were employees acting in the scope and course of their employment with the Fire Company when they were involved in the accident with their co-worker that caused their injuries. *See* Answer and New Matter at ¶ 86; Reproduced Record (R.R.) at 50-51. Whether Appellants (and Ryan Morris) were acting within the course and scope of their employment was, therefore, essential to determining the applicability of the Act's immunity provisions to Appellants' claims. Appellants' suggestion that this factual determination amounted to the jury

_____

[5] Section 205 of the Act provides:

> If disability or death is compensable under this act, a person shall not be liable to anyone at common law or otherwise on account of such disability or death for any act or omission occurring while such person was in the same employ as the person disabled or killed, except for intentional wrong.

Section 205 was added to the Act by the Act of August 24, 1963, P.L. 1175, 77 P.S. § 72.

[6] Although not binding, Superior Court decisions are persuasive authority in this Court. *Lerch v. Unemployment Comp. Bd. of Review*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

making determinations about Appellants' rights to workers' compensation benefits is incorrect. As the trial court noted:

> The factual issue remaining of whether or not Joseph Hall and Rosemarie Hall were acting within the scope and course of their duties with the Shickshinny Volunteer Fire Company at the time of the accident was properly before the jury. The jury heard all of the admissible evidence regarding whether or not Joseph Hall and Rosemarie Hall were acting within the scope and course of their duties with the Shickshinny Volunteer Fire Company at the time of the accident. They did not do so for the purpose of awarding workers' compensation benefits, but did so to determine if the claim was barred.

Trial Court Opinion dated February 14, 2019 (Trial Court Opinion) at 16. The trial court had subject matter jurisdiction to entertain evidence that would allow the court to determine whether the Act's immunity provisions applied. *See Bell*. Accordingly, the trial court did not err in allowing the jury to make these factual determinations.

Additionally, Appellants' suggestion that Section 401.1 of the Act, added by the Act of Feb. 8, 1972, P.L. 25, No. 12, § 3, requires that a WCJ determine the applicability of the Act's immunity provisions is likewise incorrect. In pertinent part, Section 401.1 provides that:

> The department shall also hear and determine all petitions by employers or insurers to suspend, terminate, reduce or otherwise modify compensation payments, awards, or agreements and petitions by employes or their dependents to increase, modify or reinstate compensation payments, awards, or agreements.

77 P.S. § 710. This section simply does not require that a WCJ determine a party's invocation of Act immunities as an affirmative defense, and such an interpretation

10

would be contrary to the ability of courts of common pleas to determine whether the Act bars actions before such courts. *See Bell*.

### *Jury Instruction Claim*

Appellants next claim that the trial court erred by failing to properly charge the jury regarding Section 601 of the Act, which concerns the application of the Act to members of volunteer fire companies.[7] *See* Appellants' Brief at 25-29. Appellants have waived this claim.

Pennsylvania's Rules of Appellate Procedure provide that, generally, "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302. More specifically, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b)(4)(vii), "[i]ssues not included in the [s]tatement [of errors complained of on appeal] and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii); *see City of Philadelphia v. Lerner*, 151 A.3d 1020, 1024 (Pa. 2016) (reaffirming the "well-

---

[7] Section 601 of the Act provides, in pertinent part:

> (a) In addition to those persons included within the definition of the word "employe" as defined in section 104, "employe" shall also include:

> (1) members of volunteer fire departments or volunteer fire companies, including any paid fireman who is a member of a volunteer fire company and performs the services of a volunteer fireman during off-duty hours, who shall be entitled to receive compensation in case of injuries received while actively engaged as firemen or while going to or returning from a fire which the fire company or fire department attended including travel from and the direct return to a fireman's home, place of business or other place where he shall have been when he received the call or alarm[.]

77 P.S. § 1031(a)(1).

settled, bright-line rule" that "issues not raised in a Rule 1925(b) statement will be deemed waived" and holding that "[b]y failing to comply with Rule 1925(b), [the appellant] waived the issue that he . . . request[ed] [the] Court to address").

The record illustrates that at trial of this matter Appellants neither requested that the trial court provide a jury instruction regarding Section 601 of the Act nor objected to the lack of such an instruction in the jury charge given. Further, Appellants did not raise the issue in their Concise Statement of Errors Complained of On Appeal. *See* Supplemental Reproduced Record (S.R.R.) at 76b-92b; 97b-101b. In fact, this specific argument appears now, for the first time, in Appellants' Brief. This issue may not be raised for the first time now on appeal. Accordingly, Appellants waived this jury instruction claim.[8]

### *Judicial Estoppel Claim*

Appellants next claim that the trial court should have judicially estopped Appellees from claiming that Appellants' injuries occurred within the scope and course of their employment with the Fire Company. *See* Appellants' Brief at 30-35. Specifically, Appellants claim that Appellees previously denied that Appellants were acting within the course and scope of their employment with the Fire Company in workers' compensation filings and proceedings, and, therefore, the trial court should have estopped Appellees from arguing the opposite in the instant

---

[8] We acknowledge that Appellants allege to have objected at trial to the jury interrogatories and further claim that they did raise their objection to the text of the special jury interrogatories in their post-trial motions. We note, however, that an objection to the text of a written special interrogatory to be sent out with the jury for deliberation – effectively the text of the verdict sheet – is separate and distinct from a claim regarding instructions on the law to be given during a trial court's jury charge prior to deliberation. These distinct objections require separate objections at different points in the court proceedings. While Appellants may have preserved their special interrogatory claim by objecting at trial, no party objected to the trial court's jury instructions. Therefore, and for the additional reasons stated *supra*, Appellants waived any jury instruction claim based on Section 601 of the Act in this matter.

matter. *See* Appellants' Brief at 30-35. We do not agree that judicial estoppel applies to this case.

"The purpose of judicial estoppel is to ensure the parties do not play 'fast and loose' with the facts in order to suit their interests in different actions before different tribunals." *Marazas v. Workers' Comp. Appeal Bd. (Vitas Healthcare Corp.)*, 97 A.3d 854, 859 (Pa. Cmwlth. 2014); *see also Trowbridge v. Scranton Artificial Limb Co.*, 747 A.2d 862, 865 (Pa. 2000) ("the purpose of the doctrine is to uphold the integrity of the courts by preventing parties from abusing the judicial process by changing positions as the moment requires") (citations omitted). As this Court has explained:

> as a general rule, a party to an action is estopped from assuming a position inconsistent with his or her assertion in a previous action, if his or her contention was successfully maintained. Accordingly, judicial estoppel is properly applied only if the court concludes the following: (1) that the appellant assumed an inconsistent position in an earlier action; and (2) that the appellant's contention was "successfully maintained" in that action.

*Marazas*, 97 A.3d at 859 (brackets omitted). "To estop later inconsistent statements, the original statements must be verified or sworn." *Id.* at 860. Further,

> [f]or judicial estoppel to attach, the position asserted also must have been "successfully maintained." Stated differently, the prior inconsistent statement must persuade the decision-maker.
>
> Our courts interpret "successfully maintain" as different than litigating to conclusion. Settlement of a claim, despite binding the parties and ending an action, does not equal "successfully maintain." Thus, our courts uphold the "successfully maintain" element of judicial estoppel

13

based on the action of a decision-maker, not the actions of the parties.

*Id.* at 860–61 (internal citations omitted).

Here, the record does not support Appellants' argument that Appellees changed their position regarding whether Appellants were acting within the course and scope of their employment with the Fire Company at the time of the accident. Initially, Shickshinny Borough and its workers' compensation insurance carrier, not Appellees, filed the Notices of Workers' Compensation Denial relied on by Appellants. *See* R.R. at 273 & 275. Additionally, the record clearly illustrates that Shickshinny Borough's workers' compensation insurer issued the June 20, 2006 Notices of Workers' Compensation Denial in response to a June 9, 2006 letter from Appellants' counsel informing the insurance adjuster that Appellants were not acting in the course of their employment at the time of the accident. *See* S.R.R. at 46b-47b, 50b-51b & 56b. As a result of Appellants' counsel's June 9, 2006 letter, the workers' compensation insurance carrier closed the file and the matter was not further contested before any tribunal.

Based on this evidence, the trial court dismissed Appellants' judicial estoppel claim, concluding as follows:

> [Appellants'] attorney authored a letter regarding their workers' compensation claims on June 9, 2006 in which their legal counsel stated that they were not in the course of their employment as members of the Shickshinny Volunteer Fire Company on the date of the accident, thereby, ending their Workers' Compensation claims at that time. The matter did not proceed any further to adjudication before a [WCJ] to consider, nor did [a WCJ] take testimony or render an opinion regarding this matter. Thus, [Appellants'] claim fails.

14

Trial Court Opinion at 19.

We agree with the trial court's conclusion. Even assuming the statements of the Notices of Workers' Compensation Denial could be imputed to Appellees, because Appellants' workers' compensation ended as a result of Appellants' voluntary representation regarding their employment relation to the Fire Company, no "successful maintenance" of a prior inconsistent position ever occurred. *See Marazas*, 97 A.3d at 861 (noting that an employer "cannot be estopped from taking a position contrary to the one it never established"); *see also Ham v. Gouge*, 257 A.2d 650 (Pa. Super. 1969) (finding judicial estoppel improper based on a defendant's representation in civil pleadings that was inconsistent with a defendant's position in a prior workers' compensation matter that plaintiff had voluntarily withdrawn prior to decision by a WCJ).

Because the record does not illustrate that Appellees successfully maintained a position contrary to that taken at trial, the trial court properly declined to apply judicial estoppel to this matter.

### New Trial/Weight of the Evidence Claim

Lastly, Appellants claim the trial court erred by not granting their motion for a new trial because the jury's verdict was against the weight of the evidence. *See* Appellants' Brief at 35-38. This claim lacks merit.

As this Court has explained:

> A new trial based on weight of the evidence issues will not be granted unless the verdict is so contrary to the evidence as to shock one's sense of justice; a mere conflict in testimony will not suffice as grounds for a new trial. Upon review, the test is not whether this Court would have reached the same result on the evidence presented, but rather after due consideration of the evidence found credible by the jury, and viewing the evidence in the light

15

most favorable to the verdict winner, whether the court could reasonably have reached its conclusion. It is not the role of an appellate court to pass on the credibility of witnesses or to act as the trier of fact, and an appellate court will not substitute its judgement [sic] for that of the fact-finder.

*Worley v. Cty. of Delaware*, 178 A.3d 213, 237–38 (Pa. Cmwlth. 2017) (internal citations, quotations, and corrections omitted). Further,

> [a]ppellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Id.* at 238 (citation omitted).

The trial court assessed Appellants' weight of the evidence claim as follows:

> After having the opportunity to observe the witnesses and listen to the testimony, the [c]ourt was anything but shocked by the jury's verdict. As noted above, the record through the testimony of witnesses, which included the testimony of [Appellants], [] reflected that both Rosemarie and Joseph Hall were approved to be members of the Shickshinny Volunteer Fire Company. Rosemarie Hall received a coat, helmet and a pager that

16

received calls from the Luzerne County 911 Center and would assist and direct traffic at accident scenes. On the date of the accident, Rosemarie and Joseph Hall had their pagers with them. Furthermore, at the hospital, Rosemarie Hall signed a form indicating that she was a co-employee acting as a member of the fire department at the time of the accident. The jury also heard that on the date of the accident, Joseph Hall had the Shickshinny Volunteer Fire Company pager turned on and he received two calls for the Mocanaqua Bridge accident.

There was minimal inconsistent testimony during the trial in this matter which goes to credibility and the [c]ourt is not permitted to substitute its judgment for that of the jury on issues of credibility. Nothing in the record leads to the conclusion that the verdict was against the weight of the evidence. The jury heard from Kevin McDaniels who testified that he overheard the conversation between Beverly Ann Moore and Joseph Hall indicating that Joseph and Rosemarie Hall were going to the fire call at the time of the accident. Debra McDaniels testified that during her examination of Joseph Hall, he indicated that he was sitting outside on a bench on the side of Wachovia Bank when Rosemarie Hall ran out of the house and said that the pager went off. Rosemarie Hall then got into the car and did a U-turn he [sic] got in the car and they proceeded to travel south on Main Street toward the accident.

Holly Sue Morris testified that Rosemarie Hall was never precluded from doing any of the activities she had been doing for the fire department. Furthermore, Rosemarie Hall and Joseph Hall were never told that they could not continue to perform activities for the fire company into May of 2006 when the accident occurred. At the time of the accident, both Rosemarie Hall and Joseph Hall were still considered to be members of the fire department and had equipment, turnout gear and a pagers [sic] assigned to them. Ms. Morris testified that she heard the conversation between Joseph and Rosemarie Hall

17

while they were in the back of the ambulance indicating that they were on their way to the accident. Finally, Kevin Morris testified that he heard Joseph Hall telling Beverly Moore that he was going to the accident and got into an accident on the way to the accident.

As the above excerpts of the trial testimony reflect, there was an abundance of evidence presented by all parties that the jury found credible. Nothing in the record leads to the conclusion that the verdict that Joseph and Rosemarie Hall were acting within the scope and course of their duties with the Shickshinny Volunteer Fire Company at the time of the automobile accident was against the weight of the evidence or shocked one's sense of justice.

Trial Court Opinion at 20-22 (internal record citations omitted).

We find no abuse of discretion in the trial court's assessment of the evidence presented at trial. Adequate evidence of record existed to allow the jury to conclude, as it did, that Appellants were acting within the course and scope of their employment with the Fire Company at the time of the accident. Accordingly, we find no error in the trial court's denial of a new trial based upon Appellants' weight of the evidence claim.

For the reasons above, we find no error of law or abuse of discretion in the trial court's denial of Appellants' post-trial motion seeking a new trial. Accordingly, we affirm the order of the trial court.

_____
CHRISTINE FIZZANO CANNON, Judge

18

Joseph Hall and Rosemarie Hall,    :
his Wife,    :
               Appellants    :
    :
    v.    :
    :
Ryan Morris, Holly Sue Morris,    :
Shickshinny Volunteer Fire    :
Company, Inc.    :
    :
    v.    :
    :   No. 220 C.D. 2019
Rosemarie Hall    :

## O R D E R

AND NOW, this 6th day of January, 2020, the August 30, 2018 order of the Court of Common Pleas of Luzerne County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge